1  Ben F. Pierce Gore (SBN 128515)
2  PRATT & ASSOCIATES
   1901 S. Bascom Avenue, Suite 350
3  Campbell, CA 95008
   Telephone: (408) 429-6506
4  Fax: (408) 369-0752
   pgore@prattattorneys.com
5
   *Attorneys for Plaintiff*
6

**Filed**

MAY 2 1 2012

ADR

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

*Paid*

7

8

**E-filing**

9       IN THE UNITED STATES DISTRICT COURT

10      FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13  SCOTT BISHOP, individually and on          C V 12 - 0 2 6 2 1      **HRL**
    behalf of all others similarly situated,    Case No.

14                                              **CLASS ACTION AND REPRESENTATIVE
                                                ACTION**
              Plaintiff,
15
    v.                                          **COMPLAINT FOR DAMAGES,
16                                              EQUITABLE AND INJUNCTIVE RELIEF**

    7-ELEVEN, INC.,
17                                              **JURY TRIAL DEMANDED**

18            Defendant.

19

20      Plaintiff, through his undersigned attorneys, brings this lawsuit against Defendant as to his

21  own acts upon personal knowledge, and as to all other matters upon information and belief.  In

22  order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust

23  profits, Plaintiff brings this action on behalf of a class of California consumers who, within the

24  last four years, purchased Defendant's potato snacks labeled "0 grams Trans Fat" and "No

25  Cholesterol" but which contained more than 13 grams of fat per 50 grams (referred to herein as

26  "Misbranded Food Products").

27

28

**INTRODUCTION**

1.     Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

2.     Defendant 7-ELEVEN, Inc. ("7-ELEVEN") is a publicly traded company. Although, Defendant operates convenience store through franchises, it also manufactures, markets and sells a variety of products, including 7-ELEVEN "Select 7" chips. Select 7 chips are sold throughout the United States, including in California. Historically, snack foods have not been viewed as being a form of health food but as consumer preferences have begun to favor healthier options, Defendant has chosen to implement a health and wellness strategy to reposition its products as a healthy option. As part of this health and wellness strategy Defendant makes a number of claims about its products.

3.     Defendant's reason for doing so was driven by its pecuniary interests.

4.     Defendant recognizes that health claims drive food sales, and actively promotes the purported health benefits of its potato chips, notwithstanding the fact that promotion violates California and federal law.

5.     If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendant has made, and continues to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet,

1    or does not contain any nutrients at levels that raise the risk of diet-related disease or health-

2    related condition.

3           6.     Identical federal and California laws regulate the content of labels on packaged

4    food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by

5    the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").

6    California Health & Safety Code § 109875, *et seq.*   Under FDCA section 403(a), food is

7    "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain

8    certain information on its label or its labeling. 21 U.S.C. § 343(a).

9           7.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

10   term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those

11   claims that might be technically true, but still misleading.  If any one representation in the

12   labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling

13   cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking

14   and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

15   *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

16   that anyone was actually misled.

17          8.     In promoting the health benefits of their Misbranded Food Products, Defendant

18   has claimed to understand the importance of communicating responsibly about their products.

19   Nevertheless, Defendant has made, and continues to make, false and deceptive claims about its

20   Select 7 chips snacks in violation of federal and California laws that govern the types of

21   representations that can be made on food labels.  In particular, in making its improper "0 grams

22   Trans Fat" claims on its Misbranded Food Products, Defendant has violated nutrient content

23   labeling regulations mandated by federal and California law which require a disclosure of

24   nutrients (fat, saturated fat, cholesterol, and sodium) present in a food at a level that the FDA has

25   concluded increases the risk of diet-related disease or health-related condition, required whenever

26   a nutrient content claim is made.

27          9.     Defendant has made, and continues to make, improper nutrient content claims on

28   food labels of its Misbranded Food Products that are prohibited by federal and California law and

1    which render these products misbranded. Under federal and California law, Defendant's

2    Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold.

3    Defendant's false and misleading labeling practices stem from their global marketing strategy.

4    Thus, the violations and misrepresentations are similar across product labels and product lines.

5          10.     Defendant's violations of law are numerous and include: (1) the illegal

6    advertising, marketing, distribution, delivery and sale of misbranded Defendant's Misbranded

7    Food Products to consumers in California; (2) the failure to properly disclose the high levels of

8    fat in their Misbranded Food Products on the Misbranded Food Products' packaging and labeling

9    as required by law; and (3) the failure to include statements on the Misbranded Food Products

10    packaging and labeling that are mandated by law.

11                                   **PARTIES**

12          11.     Plaintiff Scott Bishop is a resident of San Jose, California who purchased

13    Defendant's snacks, in California during the four (4) years prior to the filing of this Complaint

14    (the "Class Period"). Attached hereto as Exhibit 1 are copies of photographs of package labels on

15    products purchased by Plaintiff.

16          12.     Defendant 7-ELEVEN is a Texas company with its principle place of business

17    located in the City of Dallas, Dallas County, Texas.

18                     **JURISDICTION AND VENUE**

19          13.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)

20    because this is a class action in which: (1) there are over 100 members in the proposed class;

21    (2) members of the proposed class have a different citizenship from Defendants; and (3) the

22    claims of the proposed class members exceed $5,000,000 in the aggregate.

23          14.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28

24    U.S.C. § 1331, because it arises under the laws of the United States.

25          15.     The Court has jurisdiction over the California claims alleged herein pursuant to 28

26    U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

27    United States Constitution.

28

16.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

17.     The Court has personal jurisdiction over the Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over the Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

### A.     Identical California And Federal Laws Regulate Food Labeling

19.     Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the Federal Food, Drug and Cosmetics Act ("FDCA") and its labeling regulations, including those set forth in 21 C.F.R. § 101.

20.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."  California Health & Safety Code § 110100.

21.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations.  For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails

1    to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and

2    regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if

3    their labeling fails to conform with the requirements for nutrient content and health claims set

4    forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California

5    Health & Safety Code § 110705 if words, statements and other information required by the

6    Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are

7    misbranded under California Health & Safety Code § 110735 if they are represented as having

8    special dietary uses but fail to bear labeling that adequately informs consumers of their value for

9    that use; and are misbranded under California Health & Safety Code § 110740 if they contain

10   artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose

11   that fact on their labeling.

12   **B.     Defendant's Food Products Are Misbranded**

13        22.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a

14   nutrient in a food is a "nutrient content claim" that must be made in accordance with the

15   regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly

16   adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

17        23.     Nutrient content claims are claims about specific nutrients contained in a product.

18   They are typically made on the front of packaging in a font large enough to be read by the

19   average consumer. Because these claims are relied upon by consumers when making purchasing

20   decisions, the regulations govern what claims can be made in order to prevent misleading claims.

21        24.     Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied

22   nutrient content claims on labels of food products that are intended for sale for human

23   consumption. *See* 21 C.F.R. § 101.13.

24        25.     21 C.F.R. § 101.13 provides the general requirements for nutrient content claims,

25   which California has expressly adopted. *See* California Health & Safety Code § 110100. 21

26   C.F.R. § 101.13 requires that manufacturers include certain disclosures when a nutrient claim is

27   made and, at the same time, the product contains unhealthy components, such as fat, saturated fat,

28   cholesterol and sodium at levels that the FDA has concluded increases the risk of diet-related

disease or health related condition.  It also sets forth the manner in which that disclosure must be made, as follows:

> (4)(i) The disclosure statement "See nutrition information for ____ content" shall be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by §101.105(i) for the net quantity of contents statement, except where the size of the claim is less than two times the required size of the net quantity of contents statement, in which case the disclosure statement shall be no less than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the package complies with §101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch.

> (ii) The disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material other than, if applicable, other information in the statement of identity or any other information that is required to be presented with the claim under this section (e.g., see paragraph (j)(2) of this section) or under a regulation in subpart D of this part (e.g., see §§101.54 and 101.62). If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel except for the panel that bears the nutrition information where it may be omitted.

26.    An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories").  *See* 21 C.F.R. § 101.13(b)(1).

27.    An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").  21 C.F.R. § 101.13(b)(2)(i-ii).

## C.    Defendant's Improper Nutrient Content Claims

28.    To appeal to consumer preferences, Defendant has repeatedly made improper nutrient content claims on products containing disqualifying levels of fat, saturated fat, cholesterol or sodium.  These nutrient content claims were improper because they have failed to include disclosure statements required by law that are designed to inform consumers of the inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has been incorporated in California's Sherman Law.

29. 21 C.F.R. § 101.13 (h)(l) provides that:

If a food ... contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less ... per 50 g ... then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

30. Defendant repeatedly violates this provision. Defendant's Misbranded Food Products' packaging prominently makes "0 grams Trans Fat" claims despite disqualifying levels of fat that far exceed the 13 gram disclosure threshold.

31. Pursuant to 21 C.F.R. § 101.13(h), Defendant is prohibited from making the unqualified nutrient claims of "0 grams Trans Fat" on its food products if its products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

32. Defendant's "No Cholesterol" claim is also improper. The term "Cholesterol Free" or "No Cholesterol" may be used on labeling of a food with a Referenced Amount Customarily Consumed (RACC) of two (2) tablespoons or less that contains more than 13g of total fat per 50g only if the following criteria, set forth in 21 CFR 101.62 (d)(1)(ii) are met: (1) the food contains less than 5mg of cholesterol per RACC and per labeled serving; (2) the food contains no ingredients that is generally understood by consumers to contain cholesterol; (3) the food contains 2g or less of saturated fatty acids per RACC; and (4) the label or labeling discloses the level of total fat in a serving... The RACC for shortening is 1 tablespoon. Where a product label states "no cholesterol" and contains more than 13 grams of fat per 50 grams but does not reveal the fat it contains per serving size on that panel, it is likewise misbranded. Defendants' snack products fail to meet the requirements to make a "No Cholesterol" claim as they contain more than 13 grams of fat per 50 grams and do not reveal the fat it contains per serving size on the panel.

33.     These regulations are intended to ensure that consumers are not misled to believe that a product that claims, for instance, to be low in trans fat, but actually has other unhealthy fat levels, is a healthy choice, because of the lack of trans fats.

34.     Nevertheless, Defendant's Misbranded Food Products' labels state that the products contain "0 grams Trans Fat" without such a disclosure even though the products contain fat in excess of 13 grams.

35.     Based on the fat, saturated fat, cholesterol and sodium content of Defendant's products, pursuant to federal and California law, Defendant must include a warning statement adjacent to the trans fat nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium.    No such disclosure statement currently exists on Defendant's Misbranded Food Products.  Therefore, they are misbranded as a matter of federal and California law and cannot be sold because they are legally worthless.

36.     In October 2009, the FDA issued a Guidance For Industry: Letter regarding Point Of Purchase Food Labeling ("2009 FOP Guidance"), to address its concerns about front of package labels.

The 2009 FOP Guidance advised the food industry:

FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading.  The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

... Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

37.     Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the improper and misleading "0 grams Trans Fat" nutrient content claims from its Misbranded Food Products.

38.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter").

39.     The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. ...

As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two. Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.
- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.
- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.
- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market. Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers

further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

40.     Notwithstanding the Open Letter, Defendant continues to utilize improper trans fat nutrient content claims, despite the express guidance of the FDA in the Open Letter that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."

41.     Defendant also continues to ignore the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related." Defendant continues to utilize improper trans fat nutrient claims on the labels of their Misbranded Food Products.  As such, Defendant's Misbranded Food Products continue to run afoul of FDA guidance as well as California and federal law.

42.     In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers, for the same types of improper 0 grams Trans Fat nutrient content claims described above.  In these letters the FDA indicated that as a result of the same type of 0 gram trans fat claims utilized by Defendant, products were in "violation of the Federal Food, Drug, and Cosmetic Act ... and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and "misbranded within the meaning of section 403 because the product label bears a nutrient content claim but does not meet the requirements to make the claim."  Likewise, the FDA has sent warning letters to the industry, including Defendant's peer food manufacturers, for improper "No Cholesterol" nutrient content claims.

43.     The warning letters were hardly isolated, as the FDA has issued at least nine other warning letters to other companies for the same type of improper 0 grams Trans Fat nutrient content claims at issue in this case.

44.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing improper "0 grams Trans Fat" and "No Cholesterol" nutrient content claims without meeting the requirements to make them.

45.     Plaintiff did not know, and had no reason to know, that Defendant's Misbranded Food Products were misbranded, and bore nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiff was equally unaware that Defendant's Misbranded Food Products contained one or more nutrients like total fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related."

**D.     Defendants Has Violated California Law**

46.     Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

47.     Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

48.     Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

49.     Defendant has violated California Health & Safety Code § 110660 because its labeling is false and misleading in one or more ways, as follows:

a.      Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110665 because its labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto;

b.      Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because its labeling fails to conform with the requirements for

1  nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted

2  thereto; and

3             c.      Defendant's Misbranded Food Products are misbranded under California

4  Health & Safety Code § 110705 because words, statements and other information required by the

5  Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

6        50.      Defendant has violated California Health & Safety Code § 110760 which makes it

7  unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is

8  misbranded.

9        51.      Defendant's Misbranded Food Products are misbranded under California Health &

10  Safety Code § 110755 because they purport to be or are represented for special dietary uses, and

11  its labels fail to bear such information concerning their vitamin, mineral, and other dietary

12  properties as the Secretary determines to be, and by regulations prescribes as, necessary in order

13  fully to inform purchasers as to its value for such uses.

14        52.      Defendant has violated California Health & Safety Code § 110765 which makes it

15  unlawful for any person to misbrand any food.

16        53.      Defendant has violated California Health & Safety Code § 110770 which makes it

17  unlawful for any person to receive in commerce any food that is misbranded or to deliver or

18  proffer for deliver any such food.

19        54.      Defendant has violated the standard set by 21 C.F.R. § 101.13(h), which has been

20  incorporated by reference in the Sherman Law, by failing to include on their product labels the

21  nutritional information required by law.

22  **E.**     **Plaintiff Purchased Defendant's Misbranded Food Products**

23        55.      Plaintiff cares about the nutritional content of food and seeks to maintain a healthy

24  diet.

25        56.      Plaintiff purchased Defendant's Misbranded Food Products, including Select 7

26  chips, on occasions during the Class Period.

27

28

57.    Plaintiff read the labels on Defendant's Misbranded Food Products, including the "0 grams Trans Fat" nutrient content label, before purchasing them.  Defendant's failure to disclose the presence of risk-increasing nutrients in connection with its "0 grams Trans Fat" nutrient content claim and its use of the "No Cholesterol" claim was deceptive because it falsely conveyed to the Plaintiff the net impression that the Misbranded Food Products he bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health- related condition.

58.    Plaintiff relied on Defendant's package labeling including the "0 grams Trans Fat" and "No Cholesterol" nutrient content claims, and based and justified the decision to purchase Defendant's products in substantial part on Defendant's package labeling including the "0 grams Trans Fat" and "no Cholesterol" nutrient content claims.

59.    At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had he known the truth about them.

60.    At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "0 grams Trans Fat" and "No Cholesterol" nutrient content claims were improper and unauthorized as set forth herein, and would not have bought the products absent the improper "0 grams Trans Fat" nutrient content claim.

61.    As a result of Defendants improper nutrient content claims, Plaintiff and thousands of others in California purchased the Misbranded Food Products at issue.

62.    Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.  Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

63.    A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not

have purchased Defendant's Misbranded Food Products had he known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in California who, within the last four years, purchased "Select 7" snack chips labeled "0 grams Trans Fat" and/or "No Cholesterol," but which contained more than 13 grams of fat per 50 grams (the "Class").

65.     The following persons are expressly excluded from the Class: (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

66.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

67.     <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

68.     <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

a.      Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Food Products sold to consumers;

b.      Whether the food products at issue were misbranded as a matter of law;

c.      Whether Defendant made improper and misleading nutrient content claims with respect to its food products sold to consumers;

d.      Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, and the Sherman Law;

e.   Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.   Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

g.   Whether Defendant was unjustly enriched by its deceptive practices.

69.   Typicality:   Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Food Products during the Class Period. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

70.   Adequacy:   Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

71.   Superiority:   There is no plain, speedy or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.   Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

72.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

73.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

74.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**Unlawful Business Acts and Practices**

75.     Plaintiff incorporates by reference each allegation set forth above.

76.     Defendant's conduct constitutes unlawful business acts and practices.

77.     Defendant sold Misbranded Food Products in California during the Class Period.

78.     Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

79.     Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

80.     Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

81.     Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

82.     Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold, or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

83.     As a result of Defendant's illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

84.     Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

85.     As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### SECOND CAUSE OF ACTION
**Business and Professions Code § 17200, *et seq.***
**<u>Unfair Business Acts and Practices</u>**

86.     Plaintiff incorporates by reference each allegation set forth above.

87. Defendant's conduct as set forth herein constitutes unfair business acts and practices.

88. Defendant sold Misbranded Food Products in California during the Class Period.

89. Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct.

90. Defendant's deceptive marketing, advertising, packaging and labeling of its Misbranded Food Products and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

91. Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

92. Plaintiff and the Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

93. The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor. Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

94. As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### <u>Fraudulent Business Acts and Practices</u>

95.   Plaintiff incorporates by reference each allegation set forth above.

96.   Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

97.   Defendant sold Misbranded Food Products in California during the Class Period.

98.   Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

99.   Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendants Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

100.   Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

101.   As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### FOURTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### <u>Misleading and Deceptive Advertising</u>

102.   Plaintiff incorporates by reference each allegation set forth above.

103.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

104.   Defendant sold Misbranded Food Products in California during the Class Period.

105.   Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and nature of Defendant Misbranded Food Products. Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiff and the Class that were intended to reach members of the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

106.   In furtherance of their plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

107.   Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

108.   As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

109.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

## FIFTH CAUSE OF ACTION
### Business and Professions Code § 17500, *et seq.*
### Untrue Advertising

110.    Plaintiff incorporates by reference each allegation set forth above.

111.    Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

112.    Defendant sold Misbranded Food Products in California during the Class Period.

113.    Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.    These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.    Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the Class.    Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

114.    In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.    Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

115.    Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of

Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

116. As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

117. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**
**Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

118. Plaintiff incorporates by reference each allegation set forth above.

119. This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary damages and is limited solely to injunctive relief. Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant with notice pursuant to Cal. Civ. Code § 1782.

120. At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendant was willful, oppressive and fraudulent, thus supporting an award of punitive damages.

121. Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendant for their violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

122. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

123. Defendant sold Misbranded Food Products in California during the Class Period.

124. Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

125. Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

126. By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

127. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

128. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

129. By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

130. Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2). If

Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

131.   Plaintiff incorporates by reference each allegation set forth above.

132.   As a result of Defendant's fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Misbranded Food Products Defendant was enriched at the expense of Plaintiff and the Class.

133.   Defendant sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.  It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits they received from Plaintiff and the Class, in light of the fact that the products were not what Defendant purported them to be.  Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendant for the products at issue.

134.   As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Beverly-Song Act (Cal. Civ. Code § 1790, et seq.)

135.   Plaintiff incorporates by reference each allegation set forth above.

136.   Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

137.   Defendant is a "manufacturer" and "seller" as defined by Cal. Civ. Code § 1791(j) & (l).

138.   Defendant's food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

139.   Defendant's nutrient and health content claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

140.    Defendant, through its package labels, creates express warranties by making the affirmation of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

141.    Despite Defendant's express warranties regarding its food products, it does not comply with food labeling regulations under federal and California law.

142.    Defendant breached its express warranties regarding their Misbranded Food Products in violation of Cal. Civ. Code § 1790, *et seq.*

143.    Defendant sold Plaintiff and members of the Class Defendant's Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

144.    As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

145.    Defendant's breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
### Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

146.    Plaintiff incorporates by reference each allegation set forth above.

147.    Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

148.    Defendant is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301(4) & (5).

149.    Defendant's food products are "consumer products" as defined by 15 U.S.C. § 2301(1).

150.    Defendant's nutrient and health content claims constitute "express warranties."

151.    Defendants, through its package labels, creates express warranties by making the affirmation of fact and promising that its Misbranded Food Products comply with food labeling regulations under federal and California law.

152. Despite Defendant's express warranties regarding its food products, it does not comply with food labeling regulations under federal and California law.

153. Defendant breached its express warranties regarding its Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

154. Defendant sold Plaintiff and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

155. As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of his claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

A. For an order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B. For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend his Complaint to seek such relief;

C. For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D. For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E. For an order awarding attorneys' fees and costs;

F. For an order awarding punitive damages;

G. For an order awarding pre-and post-judgment interest; and

1        H.    For an order providing such further relief as this Court deems proper.

2  Dated:  May 21, 2012

3                             Respectfully submitted,

Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA  95008
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiff*

- 29 -
*Class Action Complaint*