1

2

3

4

5

6

ARNOLD & PORTER LLP
James F. Speyer (SBN 133114)
Email:  James.Speyer@aporter.com
Angel A. Garganta (SBN 163957)
E-Mail:  Angel.Garganta@aporter.com
Jonathan L. Koenig (SBN 281737)
E-Mail:  Jonathan.Koenig@aporter.com
Three Embarcadero Center, 7thFloor
San Francisco, California 94111-4024
Telephone:     415-471-3100
Facsimile:     415-471-3400

7

8

Attorneys for Defendant
7-ELEVEN, INC.

9

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

13

14

15

16

17

18

SCOTT BISHOP, individually and on behalf
of all others similarly situated,

     Plaintiff,

  v.

7-ELEVEN, INC.,

     Defendant.

Case No.: 5:12-cv-02621 EJD

**DEFENDANT 7-ELEVEN, INC.'S
MOTION TO DISMISS AMENDED
COMPLAINT**

Hearing Date: January 18, 2013
Time:   9:00 a.m.
Location:  Courtroom 4, 5th Floor
Judge:   Hon. Edward J. Davila

19

20

21

22

23

24

25

26

27

28

32316029v6

1

## NOTION OF MOTION AND MOTION

2 **TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE THAT** on January 18, 2013, at 9:00 a.m., or as soon thereafter

4 as the matter may be heard, Defendant 7-Eleven, Inc. ("7-Eleven") will and hereby does move to

5 dismiss the First Amended Complaint ("FAC") of Plaintiff Scott Bishop pursuant to Federal Rule of

6 Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Federal Rule of Civil Procedure

7 12(b)(6) for failure to state a claim upon which relief can be granted, and Federal Rule of Civil

8 Procedure 9(b) for failure to plead claims grounded in fraud with sufficient particularity.

9        This motion is based on this Notice of Motion and Motion and the accompanying

10 Memorandum of Points and Authorities, 7-Eleven's Request for Judicial Notice, filed

11 simultaneously with this motion, and on such other written and oral argument as may be presented

12 to the Court.

13

## RELIEF SOUGHT

14        Dismissal of all of plaintiff's claims with prejudice.

15

## STATEMENT OF ISSUES TO BE DECIDED

16        Does the FAC state any claim for relief?

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3

Introduction .................................................................................................................... 1

4

Summary of the Allegations ........................................................................................... 5

5

Argument ........................................................................................................................ 6

6

I.      LEGAL STANDARD ......................................................................................... 6

7

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE
        UCL, FAL OR CLRA ........................................................................................... 7

8

        A.      Plaintiff States No Violation Of The UCL, FAL Or CLRA. ..................... 7

9

                1.      "0g Trans Fat/No Cholesterol" ..................................................... 7

10

                2.      "All Natural" ................................................................................ 11

11

                3.      "Fresh" ........................................................................................ 12

12

        B.      Plaintiff Lacks Standing Under The UCL, FAL And CLRA ................... 13

13

                1.      "0g Trans Fat/No Cholesterol" ................................................... 14

14

                2.      "All Natural" ................................................................................ 17

15

                3.      "Fresh" ........................................................................................ 17

16

        C.      Plaintiff Cannot Base A UCL, FAL Or CLRA Claim On Alleged
                Violations Of The FDCA ......................................................................... 18

17

18

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST
        ENRICHMENT .................................................................................................. 20

19

IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF
        WARRANTY...................................................................................................... 20

20

21

Conclusion .................................................................................................................... 22

22

23

24

25

26

27

28

DEF. 7-ELEVEN, INC.'S MOT. TO DISMISS AMENDED COMPLAINT                    Case No. 5:12-cv-02621 EJD

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

C<small>ASES</small>

3

4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................ 6, 7, 11, 12, 16, 17

5

6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 4, 6

7

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ................................................................ 11, 15

8

9

*Biotics Research Corp. v. Heckler*,
710 F.2d 1375 (9th Cir. 1983) ................................................................ 10, 11

10

11

*Buckland v. Threshold Enters., Ltd.*,
155 Cal. App. 4th 798 (2007) ................................................................ 4, 7, 17, 18

12

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ................................................................................ 18, 19

13

14

*Carrea v. Dreyer's Grand Ice Cream*,
475 Fed. App'x 113 (9th Cir. 2012) ........................................................ 9, 13

15

16

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................................... 18

17

*Daro v. Superior Court*,
151 Cal. App. 4th 1079 (2007) ................................................................ 14

18

19

*Delacruz v. Cytosport*,
No. 11-cv-3532, 2012 WL 2563857 (N.D. Cal. June 28, 2012) ................ 2, 8, 9

20

21

*Dietary Supplemental Coal., Inc. v. Sullivan*,
978 F.2d 560 (9th Cir. 1992) ................................................................ 10

22

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) .................................................................... 7

23

24

*Farm Raised Salmon Cases*,
42 Cal. 4th 1077 (2008) ........................................................................ 19

25

26

*Hairston v. S. Beach Beverage Co.*,
No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................ 21

27

*Hale v. Sharp Healthcare*,
183 Cal. App. 4th 1373 (2010) ................................................................ 13

28

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. 09-cv-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .............................................. 16

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011)............................................................................................ 7, 20

*Holk v. Snapple Beverage Corp.*,
    575 F.3d 329 (3d Cir. 2009)...................................................................................................... 11

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................................................... 20

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    590 F. Supp. 2d 1282 (C.D. Cal. 2008)................................................................................... 20

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ..................................................................................... 7

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ............................................................................................................ 13

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009).................................................................................................... 7

*Johns v. Bayer Corp.*,
    No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010).................................................. 20

*Kanter v. Warner-Lambert Co.*,
    99 Cal. App. 4th 780 (2002).................................................................................................... 21

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................................................... 7

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ........................................................................................ 13, 15, 16, 17

*Lam v. Gen. Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) ............................................................................... 9, 21

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188, 2012 U.S. Dist. LEXIS 102284 (N.D. Cal. July 23, 2012)....................... 21

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003).................................................................................................... 7

*Loreto v. Procter & Gamble Co.*,
    737 F. Supp. 2d 909 (S.D. Ohio 2010).................................................................................... 20

*Mason v. Coca-Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011) ................................................................................... 10, 11

- iii -

*McKinnis v. Kellogg USA*,
   No. 07-cv-2611, 2007WL 4766060 (C.D. Cal. Sept. 19, 2007) ............................................. 8, 9

*Medina v. Safe–Guard Prods.*,
   164 Cal. App. 4th 105 (2008) ............................................................................................... 14

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009) ......................................................................................................... 13

*Munoz v. MacMillan*,
   195 Cal. App. 4th 648 (2011) ............................................................................................... 20

*Myers-Armstrong v. Actavis Totowa, LLC*,
   No. 08-cv-4741, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) ........................................... 16

*Pappas v. Naked Juice Co of Glendora, Inc.*,
   No. 11-cv-08276, 2012 WL 1925598 (C.D. Cal. May 14, 2012) ......................................... 21

*Pearson v. Shalala*,
   164 F.3d 650 (D.C. Cir. 1999) ............................................................................................. 10

*Perez v. Nidek Co.*,
   657 F. Supp. 2d 1156 (S.D. Cal. 2009) ................................................................................ 20

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ............................................................................................. 17

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010) ................................................................................................ 19

*Pom Wonderful LLC v. Coca-Cola Co.*,
   679 F.3d 1170 (9th Cir. 2012) ..................................................................................... 4, 13, 19

*Princess Cruise Lines, Ltd. v. Superior Court.*,
   179 Cal. App. 4th 36 (2009) ................................................................................................. 14

*Red v. Kroger Co.*,
   No. 10-cv-01025, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ......................................... 13

*Von Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ................................................................................ 13

*Werbel v. PepsiCo, Inc.*,
   No. 09-cv-4456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ............................................... 9

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir.2008) .............................................................................................. 7, 8

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ............................................................................................................. 10

1

**STATUTES, RULES AND REGULATIONS**

2

15 U.S.C.

3
    § 2301(6) ................................................................................................................. 20
    § 2311(d) ................................................................................................................. 21

4

21 U.S.C.

5
    § 337(a) ................................................................................................................... 18
    § 343-1(a) ................................................................................................................ 13

6

21 C.F.R.

7
    § 100.1(c)(4) ........................................................................................................... 13

8
    § 101.95 ................................................................................................................... 12
    § 101.95(a) .............................................................................................................. 12

9
    § 131.200 ................................................................................................................. 12

10

Fed. R. Civ. P. 9(b) ...................................................................................................... 7, 15

11

Cal. Civ. Code

12
    § 1791(a) ................................................................................................................. 21
    § 1794(a) ................................................................................................................. 22

15 U.S.C. § 2301(6) — 20
§ 2311(d) — 21
21 U.S.C. § 337(a) — 18
§ 343-1(a) — 13
21 C.F.R. § 100.1(c)(4) — 13
§ 101.95 — 12
§ 101.95(a) — 12
§ 131.200 — 12
Fed. R. Civ. P. 9(b) — 7, 15
Cal. Civ. Code § 1791(a) — 21
§ 1794(a) — 22

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

This is plaintiff's second try at stating false advertising claims against 7-Eleven.  His original complaint purported to assert claims based on the allegation that the statement "0 Grams Trans Fat/No Cholesterol" on a package of 7-Eleven's proprietary brand of potato chips constituted false advertising -- even though the statement is completely accurate.  According to plaintiff, this statement was false advertising because it tricked him into thinking that 7-Eleven's potato chips "made only positive contributions to one's diet" -- in other words, that these were magic potato chips.  Orig. Compl. ¶ 57.  7-Eleven moved to dismiss that complaint, because its allegations showed that (1) the statement was indisputably true, (2) plaintiff was not deceived by the statement into thinking that potato chips are a health food, and (3) plaintiff suffered no economic injury, as required by California's consumer protection statutes.

Faced with 7-Eleven's motion to dismiss, plaintiff chose to amend his complaint rather than oppose the motion.  But the FAC makes no attempt to address the defects of the original complaint, and indeed adds no substantive allegations relating to the claims about chips.  Instead, it adds three new sets of operative facts about *entirely different products*, and shoehorns them into the same purported claims asserted in the original complaint (for alleged violations of the UCL, FAL, CLRA, unjust enrichment and breach of express warranty).  Thus, in addition to allegations about a "0g Trans Fat/No Cholesterol" statement on potato chips (which remain virtually identical to the allegations in the original complaint), the FAC includes allegations about (1) an "All Natural" statement on 7-Eleven's proprietary brand of strawberry ice cream, (2) a "fresh" statement on 7-Eleven's proprietary brand of yogurt parfait, and (3) supposed slack fill in a bag of "Fruity Snacks."

If plaintiff thought he had compelling claims with respect to these other products, he would have asserted them in the original complaint.  Instead, what plaintiff appears to have done is buy the ice cream and yogurt *after* he filed the original complaint, for the sole purpose of expanding the scope of this litigation and driving up the costs of defense.  Of course, making a token purchase of a product solely for the purpose of pursuing litigation is improper, and claims based on such purchases fail as a matter of law.  And as for the "Fruity Snacks" allegation, plaintiff is simply

- 1 -

1    confused.  7-Eleven does not make any product called "Fruity Snacks."  The confusion arose

2    because the same group of plaintiff's lawyers has sued dozens of food companies in federal courts

3    in California recently, and one of those cookie-cutter complaints purports to assert a claim against

4    Kellogg's, which is the company that actually makes "Fruity Snacks."[1]  Plaintiff's counsel

5    mistakenly cut and pasted the Kellogg's "Fruity Snacks" allegation into their separate lawsuit

6    against 7-Eleven.

7          Each purported claim in the FAC fails for the following reasons:

8    •       The UCL, FAL and CLRA claims fail because:

9          1.    *Plaintiff Alleges No Facts Showing A Violation Of These Laws.*

10               •    *"0g Trans Fat/No Cholesterol."*  California's consumer protection

11                    statutes apply the "reasonable consumer" standard to determine

12                    whether a statement is misleading.  No reasonable consumer would be

13                    misled into thinking that potato chips are a health food by a package

14                    that contains the true statement "0g Trans Fat/No Cholesterol."

15                    Several months ago Judge Wilken held that the same allegation did

16                    not state an actionable claim.  *Delacruz v. Cytosport*, No. 11-cv-3532,

17                    2012 WL 2563857, at *4, *8 (N.D. Cal. June 28, 2012).

18               •    *"All Natural."*  Plaintiff's claim is based on his conclusory assertion

19                    that the statement that 7-Select ice cream is "All Natural" is "in

20                    violation of federal and California law."  This claim fails because

21                    plaintiff does not and cannot identify any specific law that the claim

22                    violates.  It also fails because plaintiff alleges no facts showing that

23                    any ingredients in the ice cream are not in fact natural.

24               •    *"Fresh."*  Plaintiff's claim is based on his assertion that 7-Eleven's

25                    "Fresh to Go" brand of yogurt parfait violates an FDA regulation

26

27

28    [1] *Samet v. Procter & Gamble Co.*, No. 12-cv-1891 (N.D. Cal.) (Dkt. No. 25), Exhibit A to 7-Eleven's Request for Judicial Notice ("RJN"), at ¶¶ 25, 115.

barring foods that have been processed from claiming they are fresh. However, by its own terms, this regulation *does not apply* to pasteurized dairy products -- and yogurt, by FDA definition, must be pasteurized.

2.   *Plaintiff Lacks Standing Under These Laws.*  To establish standing under the UCL, FAL and CLRA, plaintiff must show that he was deceived by the alleged false advertising, and that he was economically injured as a result. *See infra* p. 13.

- With respect to the "0 Grams Trans Fat/No Cholesterol" statement, plaintiff has admitted that he read the labels on the package of the chips, which include the "Nutrition Facts" label disclosing all relevant nutritional information.  Plaintiff makes no claim that the "Nutrition Facts" label is inaccurate in any respect.  He therefore could not have been misled about the nutritional content of the chips.  Nor can plaintiff establish any economic injury as a result of 7-Eleven's alleged conduct, because plaintiff received a product that was exactly as advertised: potato chips with zero trans fat, no cholesterol, and other nutrients in the amounts listed on the "Nutrition Facts" label.  In these circumstances, plaintiff received precisely the product he thought he was buying, and has incurred no economic injury.

- With respect to the "All Natural" claim, the FAC does not allege that plaintiff bought the product believing that it was in fact all natural. There is thus no allegation showing that plaintiff was deceived by the advertising.

- With respect to the "fresh" claim, a plaintiff who buys a product for the purpose of pursuing litigation "lack[s] the requisite confidence in the truth and material completeness of the[] representations, and cannot establish actual  reliance for the purpose of [his] fraud claims."

- 3 -

1                   *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809

2                   (2007).

3           3.      *A private plaintiff cannot enforce FDA regulations via California's consumer*

4                   *protection statutes*.  To the extent plaintiff's UCL, FAL and CLRA claims

5                   are based on 7-Eleven's alleged violation of an FDA regulation, they are

6                   barred by the Federal Food, Drug, and Cosmetic Act ("FDCA.")  The FDCA

7                   and its accompanying regulations can be enforced only by the federal

8                   government or state governments acting under FDA supervision.  Allowing a

9                   private right of action "would undermine Congress's decision to limit

10                  enforcement of the FDCA to the federal government."  *Pom Wonderful LLC*

11                  *v. Coca-Cola Co.*, 679 F.3d 1170, 1176 (9th Cir. 2012).

12  •     The "unjust enrichment/quasi contract" claim fails because there is no such stand-

13         alone cause of action under California law, and it is in any event simply duplicative

14         of the relief plaintiff seeks under his statutory claims.

15  •     The express warranty claims fail for several reasons, including that the statements in

16         issue do not constitute express warranties and the claims do not meet the statutory

17         requirements.

18       This case involves no bona fide grievance.  It is purely a construct of plaintiff's lawyers

19  attempting to bootstrap alleged technical violations of arcane federal regulations with which no

20  ordinary consumer is familiar into a consumer class action that concludes with a large attorneys' fee

21  payout.  7-Eleven respectfully requests that the Court dismiss this lawsuit with prejudice now, "at

22  the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp.*

23  *v. Twombly*, 550 U.S. 544, 558 (2007) (citations and internal quotation marks omitted).

24

25

26

27

28

<b><u>Summary of the Allegations</u></b>

The FAC challenges three statements with respect to 7-Eleven products: a "0g Trans Fat/No Cholesterol" statement on 7-Select potato chips, an "All Natural" statement on 7-Select strawberry ice cream, and the word "fresh" on 7-Eleven's strawberry yogurt parfait.[2]

**"0g Trans Fat/No Cholesterol"**

Plaintiff alleges that he "cares about the nutritional content of food and seeks to maintain a healthy diet." FAC ¶ 103. He alleges that before he bought 7-Eleven's potato chips, he "read[] the labels" on the product. *Id.* ¶ 106.[3] The Nutrition Facts label on the chips lists the total fat content, including the amounts of saturated fat, trans fat, polyunsaturated fat, and monounsaturated fat. *Id.* ¶ 105. It also lists total calories, cholesterol content, salt content, protein content and vitamin content. *Id.* The amount of trans fat and cholesterol listed in the Nutrition Facts label are both zero. *Id.* The front of the package states, among other things, "0g Trans Fat/No Cholesterol." *Id.* *Plaintiff does not claim that any of this information is inaccurate in any respect.*

Plaintiff asserts that FDA regulations require the "0g Trans Fat/No Cholesterol" statement to be accompanied by statements identifying total grams of fat per serving and saying "See nutrition information for fat contents." *Id.* ¶¶ 50-51. He asserts that the absence of these statements "falsely portrayed" the chips as "making only a positive contribution to one's diet." *Id.* ¶ 60. He claims that he relied on the "0g Trans Fat/No Cholesterol" statement in buying the product, and would not have bought the products had he known "the truth" about them. *Id.* ¶¶ 107, 109. Finally, he claims that 7-Eleven "misrepresent[ed]" that the chips "were salable, capable of possession and not misbranded" and that he would not have bought the potato chips had he known "they were not capable of being legally sold or held." *Id.* ¶ 113.

---

[2] The FAC also alleges that plaintiff bought 7-Eleven's "Cream Cheese Jalapenos" (FAC ¶¶ 104-105), but curiously makes no attempt to state any claim with respect to this product and in fact says nothing about the product beyond the allegation that he bought it.

[3] Plaintiff made the same allegation in the original complaint, and he used the word "labels" to refer to both the front and back of the package. Orig. Compl. ¶ 11 ("Attached hereto as Exhibit 1 are copies of photographs of package labels on Products purchased by Plaintiff"); Ex. 1 (attaching images from front and back of package). The labels include the FDA-required Nutrition Facts label. *Id.*

**"All Natural"**

Plaintiff alleges that the use of the phrase "All Natural" on 7-Select strawberry ice cream "violates FDA Compliance Guide CPG Sec. 587.100." FAC ¶ 67. He does not allege that this statement violates any law or regulation. Plaintiff conclusorily alleges that he relied on the "All Natural" statement when purchasing the product, but he does not allege that he was misled by the use of the phrase "All Natural" to describe the product. *Id.* ¶ 107. Nor does he allege what he believed the phrase "All Natural" to mean. Instead of alleging that he was in some way deceived by the "All Natural" statement, he claims that 7-Eleven "misrepresent[ed]" that the ice cream was "salable, capable of possession and not misbranded" and that he would not have bought the ice cream had he known it was "not capable of being legally sold or held." *Id.* ¶ 113. Plaintiff alleges no facts showing that the ingredients in the ice cream are not in fact natural.

**"Fresh"**

Plaintiff asserts that the use of the word "fresh" on 7-Select's yogurt parfait violates an FDA regulation and FDA's Compliance Policy Guide, because the product allegedly has "been thermally processed, preserved and contain[s] chemical preservatives." FAC ¶¶ 72-74. Plaintiff alleges that he would expect that the "fresh" representations "were not contrary to regulatory requirement for making such claims." *Id.* ¶ 77. Plaintiff also alleges that he would expect that a product represented as fresh "had not been chemically preserved or subjected to processes inconsistent with a freshness claim." *Id.*

<u>**Argument**</u>

**I.   <u>LEGAL STANDARD</u>**

A motion to dismiss should be granted when a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, a court must accept factual allegations pleaded in the complaint as true, but it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations. *See id.*

1   at 681 ("[B]are assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the

2   elements' of a . . . claim" are not entitled to an assumption of truth.)

3          When alleging a claim sounding in fraud, a plaintiff must plead the circumstances of fraud

4   with particularity.  Fed. R. Civ. P. 9(b).  This heightened pleading requirement applies to claims

5   under the UCL, FAL, and CLRA that are grounded in fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d

6   1120, 1125-27 (9th Cir. 2009).  The complaint "as a whole" must meet the heightened standard.  *Id.*

7   at 1125.

8   **II.     THE COMPLAINT FAILS TO STATE A CLAIM**
9           **FOR VIOLATION OF THE UCL, FAL OR CLRA**

10         **A.     Plaintiff States No Violation Of The UCL, FAL Or CLRA.**

11               **1.     "0g Trans Fat/No Cholesterol"**

12         To state a claim based on deceptive advertising under California's consumer protection

13   statutes, plaintiff must show that "members of the public are likely to be deceived."  *Freeman v.*

14   *Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (citations and internal quotation marks omitted).  The

15   inquiry focuses on whether a "reasonable consumer" is likely to be deceived.  *In re Ferrero Litig.*,

16   794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) ("Under [the UCL, FAL, and CLRA], conduct is

17   deceptive or misleading if it is likely to deceive an ordinary consumer.") (*citing Williams v. Gerber*

18   *Prods. Co.*, 552 F.3d 934, 938 (9th Cir.2008)); *Buckland*, 155 Cal. App. 4th at 807-08 (CLRA

19   plaintiff must allege that members of the public are likely to be deceived under the reasonable

20   consumer standard).  The mere possibility that a consumer may be deceived is not enough; rather, a

21   significant portion of the consumers or general public, acting reasonably, must have been misled.

22   *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

23         Where the advertising or practice is targeted to a particular group or type of consumers, the

24   question whether it is misleading will be viewed from "the vantage point of members of the targeted

25   group, not others to whom it is not primarily directed."  *Lavie v. Procter & Gamble Co.*, 105 Cal.

26   App. 4th 496, 512 (2003); *see also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009)

27   (UCL "focuses on a reasonable consumer who is a member of the target population").  Plaintiff

28   alleges that 7-Eleven has "chosen to implement a health and wellness strategy to reposition its

products as a healthy option," and that 7-Eleven "actively promotes the purported health benefits of its products." FAC ¶¶ 2, 4. Thus, according to plaintiff, the target market for the products consists of health conscious consumers who (like plaintiff) "care[] about the nutritional content of food and seek[] to maintain a healthy diet." FAC ¶ 103.

The indisputably true affirmative statements  "0g Trans Fat" and "No Cholesterol" would not mislead a reasonable consumer into believing that 7-Eleven's chips make "only a positive contribution to one's diet." FAC ¶ 60. A reasonable consumer knows that determining whether or not a product is healthy requires much more information, including information on sodium, calories, carbohydrates and other types of fat. A reasonable consumer also knows to look to the Nutrition Facts label for complete nutritional information. *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (federally mandated nutrition information labels "have long been required on food products and are familiar to a reasonable consumer"). This is particularly true where the target population (as alleged by plaintiff) "cares about the nutritional content of food." FAC ¶ 103. As the Ninth Circuit stated in *Williams*, 552 F.3d at 939-40, "reasonable consumers expect" that the required language on the back of the package "contains more detailed information about the product that confirms other representations on the packaging."[4]

Judge Wilken recently dismissed a claim virtually identical to the one here in *Delacruz v. Cytosport*, 2012 WL 2563857, at *4, *8. In *Delacruz*, the plaintiff alleged that labels of Cytosport bars were misleading because the labels stated "0g Trans Fat," and did not contain the statement "See nutrition information for saturated fat content." *Id.* at *4. There, as here, the plaintiff did not claim that the statement misrepresented the amount of trans fat in the products, but rather that the statement somehow distracted consumers from the product's saturated fat content. *Id.* The court concluded that "[t]he alleged distraction … does not amount to a false statement or misrepresentation and, thus, is not an actionable claim." *Id.* at *8. Moreover, the court dismissed the claim even though the products were also marketed as a source of  "Healthy, Sustained Energy."

---

[4] *Williams* stands for the proposition that where a label contains an affirmative misrepresentation, the manufacturer cannot rely on the Nutrition Facts label to cure the misrepresentation. 552 F.3d at 939-40. Here the challenged statements are indisputably accurate.

1    *Id.* at *1.  The packaging in issue in this case contains no similar assertion regarding healthfulness

2    and thus it is even more apparent here than in *Delacruz* that a reasonable consumer would not be

3    misled by the labeling.  FAC ¶ 105.

4            An accurate statement that a product lacks some potentially harmful food component would

5    not lead a reasonable consumer to conclude that the product is healthful in every other respect.  In

6    *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1103-04 (N.D. Cal. 2012), the plaintiff challenged

7    the claim "gluten free" on Fruit Snacks, alleging that the statement suggested that the products were

8    healthful.  The court dismissed the claim:

9            *The Court finds that the statement 'gluten free' cannot support Plaintiff's claims*
             *under the UCL, CLRA, or FAL. The **statement is objectively true and***
10           ***communicates nothing more than the absence of gluten in the product**—a*
             *message used to convey the suitability of the Fruit Snacks to consumers with celiac*
11           *disease and others who may wish to avoid gluten. A reasonable consumer is*
             *unlikely to interpret the statement 'gluten free' to mean that the Fruit Snacks*
12           *contain no partially hydrogenated oils, low amounts of sugar or corn-syrup, or that*
             *the Fruit Snacks are otherwise healthful.*  (*Id.* (emphasis added))
13

14   Similarly, here, the statements "0g Trans Fat" and "No Cholesterol" are "objectively true and

15   communicate nothing more than the absence of [those substances] in the product."  *See id.*  A

16   reasonable consumer is not likely to conclude from those statements that the products are

17   completely healthful.

18           Numerous other courts have dismissed claims based on a plaintiff's unrealistic interpretation

19   of product labeling that supposedly led the plaintiff to conclude that an indulgent snack was

20   healthful.  *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir. 2012)

21   (affirming dismissal of UCL, FAL, and CLRA claims on ground that no reasonable consumer

22   would be deceived by labels such as "original" or "classic" into thinking that ice cream was

23   wholesome or otherwise healthy); *Werbel v. PepsiCo, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at

24   *3 (N.D. Cal. July 2, 2010) (holding that it is "[n]onsense" to think that "Cap'n Crunch Berries"

25   cereal "derives nutrition from actual fruit by virtue of the reference to 'Berries'"); *McKinnis*, 2007

26   WL 4766060, at **3-5 (rejecting claim that "Froot Loops" name suggested that the product

27   contained real fruit).  A consumer in the alleged target market of health conscious individuals would

28   be even less likely to arrive at such unrealistic interpretations of product labeling.

1

        The foregoing analysis does not change simply because plaintiff alleges a violation of FDA

2   regulations.  An alleged technical violation of FDA regulations[5] does not automatically give rise to

3   a claim or render an accurate advertising statement false or misleading.  It is up to the Court to

4   determine whether a reasonable consumer would find the statements in issue to be false or

5   misleading, and the FDA does not supplant that role.  *See Pearson v. Shalala*, 164 F.3d 650, 655

6   (D.C. Cir. 1999) (declining to adopt FDA position that it is "inherently misleading" to state health

7   claims supported by "significant scientific agreement" when not approved by FDA).

8           In *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 699-701 (D.N.J. 2011), plaintiffs filed a

9   putative class action within weeks of, and based entirely upon, an FDA warning letter claiming

10  technical noncompliance with federal labeling requirements.  The warning letter asserted that a

11  product label did not comply with FDA requirements because the word "plus" in the product name

12  ("Diet Coke Plus") characterized the product's relative nutrient content without specifying the basis

13  for the comparison, and it improperly portrayed a snack food as "fortified."  *Id*. at 705.  The

14  plaintiffs alleged that they were "persuaded to purchase the product because the term 'Plus' and the

15  language 'Diet Coke with Vitamins and Minerals' suggested to consumers that the product was

16  healthy and contained nutritional value."  *Id.* at 701.  In dismissing the complaint, the court

17  explained that "the complaint is an attempt to capitalize on an apparent and somewhat arcane

18  violation of FDA food labeling regulations.  *But not every regulatory violation amounts to an act of*

19  *consumer fraud*.  It is simply not plausible that consumers would be aware of FDA regulations

20  regarding 'nutrient content.'"  *Id.* at 705 n.4 (emphasis added).  Similarly, it is "simply not

21  plausible" that plaintiff (or any reasonable consumer) was misled on the basis of an FDA regulation

22  when the nutritional information on the packaging was correct and complete in every respect.

23

24

25  [5] The FAC also cites to informal FDA actions, including guidance to industry, open letters, and
    warning letters.  FAC ¶¶ 55-57.  However, none of these materials constitutes federal law,

26  regulation, or even a final agency act.  *See Dietary Supplemental Coal., Inc. v. Sullivan*, 978 F.2d
    560, 563 (9th Cir. 1992)  (stating "regulatory letters do not constitute final agency action.  [T]he

27  type of informal letter issued by the FDA . . . does not constitute the kind of formal or final agency
    action the Supreme Court had in mind. . . .'") (citing *Biotics Research Corp. v. Heckler*, 710 F.2d

28  1375, 1377 (9th Cir. 1983)); *accord Wyeth v. Levine*, 555 U.S. 555 (2009).

Finally, plaintiff has no actionable claim based on his allegations that he would not have bought the products had he known that they violated an FDA regulation and were not "capable of being legally sold or held."  FAC ¶ 113.  First, as discussed further *infra* at II.B.1, plaintiff cannot point to any affirmative misrepresentation 7-Eleven made on these topics, nor does he even claim (much less allege any facts showing) that 7-Eleven had any disclosure obligation with respect to these topics.  *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th  1544, 1557 (2007) (plaintiff failed to state a UCL claim based on failure to disclose where the complaint "d[id] not allege any affirmative duty to disclose").  Second, it is simply not plausible that a violation of this regulation would be material to a reasonable consumer's purchasing decision.  Ordinary consumers are not aficionados of the Code of Federal Regulations, and there is no allegation in the complaint that plaintiff, or anyone in the purported class for that matter, was even aware of this regulation.  Where the nutrition information on the product label is indisputably accurate and complete, it stretches credulity to the breaking point to conclude that a reasonable consumer would care so deeply about this labeling requirement that non-compliance with it would cause him to reverse his buying decision.  *See Mason*, 774 F. Supp. 2d at 699-700; *Iqbal*, 556 U.S. at 679 ("[D]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")

## 2.    "All Natural"

Plaintiff also fails to state any claim based on the "All Natural" statement on 7-Select ice cream.  The claim is based on the conclusory allegation that the ice cream is "misbranded" in violation of federal law and California law  (which simply adopts the federal law).  FAC ¶¶ 68, 71.  However, plaintiff does not and cannot identify any law or regulation that the "All Natural" statement allegedly violates.  All he alleges is that the labeling does not comply with an FDA "Compliance Guide," stating FDA's opinion on the use of the word "natural."  This "guide" is not a law or a regulation and does not have the force of a law or regulation.  *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339-42 (3d Cir. 2009) (declining to give preemptive effect to FDA's informal policy on "natural" claims because it does not have the force of law); s*ee also Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1377 (9th Cir. 1983) (stating "regulatory letters do not

- 11 -

1    constitute final agency action").  7-Eleven's ice cream cannot be "misbranded under federal and

2    California law" (FAC ¶ 71) if the label does not violate any federal or California law.

3        To the extent plaintiff is trying to assert a claim that is not based on the allegation that the

4    product is misbranded in violation of federal and California law, it also fails.   The FAC lacks any

5    factual allegations showing that the ice cream's ingredients are *not* in fact natural.  It accordingly

6    lacks any factual allegations to support the conclusion that the "All Natural" statement is false.  *See*

7    *Iqbal*, 556 U.S. at 664 (conclusions "are not entitled to the assumption of truth").

8                        **3.    "Fresh"**

9        Plaintiff claims that the use of the word "fresh" on 7-Eleven's yogurt parfait violates FDA

10    regulation 21 C.F.R. § 101.95(a), which bars certain processed foods from claiming they are fresh.

11    The relevant portion of the regulation (paragraph (a)) states:

12            The term "fresh," when used on the label or in labeling of a food in a manner that
             suggests or implies that the food is unprocessed, means that the food is in its raw
13            state and has not been frozen or subjected to any form of thermal processing or any
             other form of preservation . . . .  (*Id.*)
14

15    However, paragraph (a) does not apply if the "fresh" statement "does not suggest or imply that a

16    food is unprocessed or unpreserved."  21 C.F.R. § 101.95.  The regulation uses milk as an example

17    of a product where paragraph (a) does not apply, because a claim of "fresh milk"  "does not imply

18    that the food is unprocessed (consumers commonly understand that milk is nearly always

19    pasteurized.)."  *Id.*  It is thus appropriate to make a "fresh" claim on milk.  Similarly, yogurt is a

20    dairy product that in fact *must* be pasteurized, by FDA requirement.  21 C.F.R. § 131.200.

21    Accordingly, a claim of "fresh" yogurt does not suggest that the yogurt is unprocessed, and

22    paragraph (a) of 21 C.F.R. § 101.95 does not apply.

23        To the extent plaintiff alleges that the use of the word "fresh" should be barred on some

24    other ground, plaintiff's claim is preempted.  As we just showed, the use of the term "fresh" on

25    pasteurized dairy products is exempted from the limitations imposed by 21 C.F.R. § 101.95(a).

26    Allowing a state law action to circumvent this exemption by banning the use of the word "fresh" on

27    pasteurized dairy products would violate the FDCA, which prohibits any "state requirement [that]

28    directly or indirectly imposes obligations or contains provisions concerning the composition or

labeling of food" that are "not imposed by or contained in the applicable provision" or "[d]iffer from those specifically imposed by or contained in the applicable provision."  21 C.F.R. § 100.1(c)(4); 21 U.S.C. § 343-1(a); *see Carrea v. Dreyer's Grand Ice Cream*, 475 Fed. App'x 113, 115 (9th Cir. 2012) (claim seeking to "declare unlawful the very statement that federal law permits and defines," is expressly preempted under the FDCA because it "would impose a burden through state law that is not identical to the requirements" imposed by federal labeling law); *Red v. Kroger Co.*, No. 10-cv-01025, 2010 WL 4262037, at *7 (C.D. Cal. Sept. 2, 2010) (claims alleging failure to disclose partially hydrogenated vegetable oil on food labels preempted because plaintiffs "have not identified … a situation in which resolution of Plaintiffs' claims could result in requirements that are 'identical to' FDA regulations").

### B.  Plaintiff Lacks Standing Under The UCL, FAL And CLRA

A private plaintiff seeking to sue under the UCL or FAL must show that he or she "has suffered injury in fact and has lost money or property as a result of" the alleged violation.  *Pom*, 679 F.3d at 1178.  This requires the plaintiff to satisfy two distinct requirements:  (1) that he or she sustained an "economic injury" and (2) that the economic injury was "the result of, i.e., *caused by*, the . . . false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  The second requirement demands "a showing of a causal connection or reliance on the alleged misrepresentation."  *Id.* at 326; *see In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions"); *see also Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010) (actual reliance requirement of *Tobacco II* applies to the "unlawful" prong of the UCL when the predicate unlawful conduct is misrepresentation).  The CLRA imposes the same two requirements on plaintiffs.  *See Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1078 (E.D. Cal. 2010) (describing the UCL and CLRA standing requirements as "similar"); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009) (under CLRA, "the consumer bringing the action must have suffered 'damage' as the result of unlawful practices").

Plaintiff cannot satisfy the standing requirements of these statutes.

1          1.      "0g Trans Fat/No Cholesterol"

           a.      **Plaintiff Cannot Allege Reliance or Causation**
                   <u>**Because He Was Not Deceived by the Alleged Conduct**</u>

Plaintiff claims that the absence of front-of-package statements identifying the total grams of fat per serving and directing the reader to the Nutrition Facts label "portrayed the [] food products as making only positive contributions to a diet" and thereby caused plaintiff to buy the chips. FAC ¶¶ 60-61. Plaintiff's claim is fatally undermined by his candid admission that, as someone who "cares about the nutritional content of food," he read the Nutrition Facts label -- and did so before he bought the product. FAC ¶ 103 ("Plaintiff cares about the nutritional content of food. . . ."); *id.* ¶ 106 ("Plaintiff read[] the labels on [the products] . . . before purchasing them."); *see also* Orig. Compl. ¶¶ 55, 57; Ex. 1.[6]

Because he read the Nutrition Facts label -- which accurately and fully disclosed the fat and other nutrient content of the chips -- the absence of a front-of-package statement referring him to the Nutrition Facts label, or identifying the total grams of fat per serving, could not possibly have misled him or made any difference in his buying decision. Plaintiff accordingly cannot claim that any wrongful conduct by 7-Eleven caused him to buy the chips. *See Princess Cruise Lines, Ltd. v. Superior Court.*, 179 Cal. App. 4th 36, 41-47 (2009) (plaintiffs could not establish reliance as required to state a claim under the UCL or CLRA for failure of cruise ship operator to disclose additional charges for shore excursions where plaintiffs admitted that they would have gone on the shore excursions regardless of cost); *Medina v. Safe–Guard Prods.*, 164 Cal. App. 4th 105, 115 (2008) (buyer of a vehicle service contract failed to state UCL claim against unlicensed seller because buyer did not allege that he relied on the seller "having a license as required by the vehicle service contract statutes, or that [defendant's] unlicensed status *caused* him to part with the money he paid for the tire and wheel contract"); *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007) ("[T]here must be a causal connection between the harm suffered and the unlawful business

---

[6] The Original Complaint uses the word "labels" to refer to both the front and back of the package, which necessarily includes the FDA-required Nutrition Facts label. ¶ 11 ("Attached hereto as Exhibit 1 are copies of photographs of package labels on Products purchased by Plaintiff"); Ex. 1 (attaching images from front of package and back of package).

1    activity. That causal connection is broken when a complaining party would suffer the same harm

2    whether or not a defendant complied with the law").

3          Plaintiff also claims that 7-Eleven "misrepresent[ed] that the products were salable, capable

4    of possession and not misbranded," and that he would not have bought the chips had he known "the

5    truth."  FAC ¶¶ 109, 149.  But the package in issue makes no such representations, and plaintiff

6    does not identify where or when any such representation by 7-Eleven ever appeared.  FAC ¶ 105.

7    This fails to satisfy the requirements of Rule 8, as well as Rule 9(b).  Moreover, the complaint does

8    not even make the conclusory allegation that 7-Eleven had an affirmative duty to disclose this

9    information, much less provide any factual allegations supporting such an obligation.  *Berryman,*

10   152 Cal. App. 4th at 1557 (affirming trial court's sustaining of demurrer as to UCL fraud claim

11   premised on failure to disclose where the complaint "d[id] not allege any affirmative duty to

12   disclose").

13                       **b.      Plaintiff Sustained No Economic Injury**
14                               **From His Alleged Purchases of the Chips**

15         Plaintiff lacks standing for an additional and independent reason: he suffered no economic

16   injury as a result of 7-Eleven's alleged conduct.  He bought potato chips that were exactly as 7-

17   Eleven advertised them: they had zero trans fat and no cholesterol, and all the information in the

18   Nutrition Facts label was accurate.  In these circumstances -- where the product that was advertised

19   is precisely the product plaintiff bought -- the plaintiff suffers no economic injury.

20         The California Supreme Court's *Kwikset* decision confirms that plaintiff here has not

21   suffered economic injury.  51 Cal. 4th at 322.  In *Kwikset*, the plaintiff asserted UCL and FAL

22   violations when he bought a lockset in reliance on the false representation that it was made in the

23   United States.  *Id.* at 316.  The court held that a consumer who relies on a label that misrepresents

24   the product has incurred an economic loss because there is a difference between the product "as

25   labeled" and the product "as it actually is:" plaintiff bought a lockset because he thought it was

26   made in the United States and received a lockset made elsewhere.  *Id.* at 329-330.  The court held

27   that the consumer accordingly "paid more than he or she actually valued the product" -- and that it

28

1    is "[t]hat *increment*, *the extra money paid*, [that] is economic injury and affords the consumer

2    standing to sue." *Id.* at 330 (emphasis added).

3            Under *Kwikset*, plaintiff in the case at bar incurred no economic injury, because there was no

4    misrepresentation of the product, and thus no difference between the product "as labeled" and the

5    product "as it actually is." *See id.* This is not a situation where someone buys a counterfeit Rolex

6    thinking it is an authentic one -- that is, where due to mislabeling one buys a different product than

7    the one she thought she was buying. Here, the product "as labeled" is one and the same as the

8    product "as it actually is." There is accordingly no "increment," no difference in value between the

9    two products, that could give rise to any economic injury.

10           Plaintiff tries to circumvent this controlling law by claiming that the chips he purchased

11   were "legally worthless" (and that he is entitled to a full refund of the purchase price) because they

12   did not comply with FDA regulations. FAC ¶¶ 1, 54. This conclusory assertion is not entitled to

13   the assumption of truth and cannot save the claim. *Iqbal*, 556 U.S. at 664. In any event, plaintiff

14   received, and presumably ate, potato chips in the amount advertised and containing the nutrients

15   advertised. He obviously got value for his money. The notion that a product becomes "legally

16   worthless" every time it fails to comply with a labeling regulation leads to absurd results. For

17   example, suppose a regulation required the weight of a candy bar to be listed in the upper right

18   corner of the package, and it was actually listed on the upper left. Is a consumer who buys the

19   candy, eats the candy, and then claims he would not have bought the product had he known it was

20   violating this obscure regulation entitled to a full refund on the ground the product was "legally

21   worthless"? Of course not. *See Herrington  v. Johnson & Johnson Consumer Cos.*, No. 09-cv-

22   1597, 2010 WL 3448531, at **4-5 (N.D. Cal. Sept. 1, 2010) (holding allegations that products

23   contained "probable carcinogens and other unsafe substances" and that plaintiffs would not have

24   purchased the products had they known of their presence were insufficient to "allege a cognizable

25   injury to consumers" where plaintiffs did not allege that the products were defective or otherwise

26   unfit for use); *Myers-Armstrong v. Actavis Totowa, LLC*, No. 08-cv-4741, 2009 WL 1082026, at *4

27   (N.D. Cal. Apr. 22, 2009) ("California law does not allow a civil lawsuit to recover the purchase

28   price for medicine consumed by the purchaser which performed as intended with no harm or fear of

- 16 -

future harm merely because the consumer would not have purchased it had he or she known that the medicine came from a plant whose quality-control had been compromised [rendering the drugs 'adulterated' under the FDCA]."); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008) (buyers of cellular phone insurance suffered no injury resulting from fact that seller had sold the insurance while unlicensed in violation of insurance code).

Plaintiff also makes the conclusory allegation that "Plaintiff and/or the class paid a premium" for the chips.  FAC ¶ 61.  This conclusion is unsupported by any factual allegations and accordingly is not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 664.

### 2. "All Natural"

Plaintiff lacks standing to challenge the "All Natural" statement because he does not allege that he was deceived by the statement, and accordingly cannot establish the essential element of reliance.  Reliance in the fraud context means reliance on a statement *for its truth and accuracy*. *Kwikset*, 51 Cal. 4th at 327 n. 10 ("'Reliance' as used in the ordinary fraud context has always been understood to mean reliance on a statement for its truth or accuracy."); *see Buckland*, 155 Cal. App. 4th at 808 ("[A]ctual reliance occurs only when the plaintiff reposes confidence in the *truth* of the relevant representation, and acts upon this confidence.") (emphasis in original).  Thus, "a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made."  *Id.* (citations omitted). Here, plaintiff has not alleged reliance on the truth or accuracy of the "All Natural" claim, because he nowhere alleges that he believed the ice cream contained only natural ingredients when he purchased it.

In the absence of any factual allegations showing deception, plaintiff also cannot establish any economic injury as a result of 7-Eleven's alleged misconduct.  *See supra* at II.B.1.b.

### 3. "Fresh"

A plaintiff who buys a product with an eye towards filing a false advertising lawsuit cannot establish reliance.  This is because such a plaintiff necessarily must at least suspect that the company has mislabeled or misbranded information.  In this situation, the plaintiff "lack[s] the requisite confidence in the truth and material completeness of the[] representations, and cannot

1    establish actual reliance for the purpose of [his] fraud claims." *Buckland*; 155 Cal. App. 4th at 809;

2    *see also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948 (S.D. Cal. 2007) (reliance is

3    required for standing, otherwise "[a]n attorney who became aware of false advertising but who had

4    no client who was harmed by it could easily 'create' a client with standing to sue by directing a

5    willing party who was not deceived by the advertising to make a purchase").

6        This is precisely the situation here.  Plaintiff bought the yogurt parfait well after the original

7    complaint was filed, and likely after 7-Eleven filed its motion to dismiss.  Dkt. No. 1 (plaintiff's

8    original complaint filed on May 21, 2012); Dkt. No. 11 (7-Eleven's motion to dismiss filed on

9    August 27, 2012); FAC ¶ 105 (label of the yogurt parfait plaintiff purchased with an expiration date

10   of September 14, 2012.  Given this timing, and given that plaintiff's counsel has used the exact

11   same tactic of expanding the complaint to include other products in response to motions to dismiss

12   in other cases,[7] it is not plausible that plaintiff made a completely innocent and independent

13   purchase of this product, without any direction from plaintiff's counsel.  *See Buckland*, 155 Cal.

14   App. 4th at 818-19 (concluding a party who had bought a product suspecting it was mislabeled in

15   order to pursue a UCL fraud action had not established standing).

16
17       C.    **Plaintiff Cannot Base A UCL, FAL Or CLRA**
             **Claim On Alleged Violations Of The FDCA**

18       Plaintiff cannot base his claims on any alleged violations of FDA regulations for an

19   additional reason:  Private litigants are not proper parties to enforce compliance with the FDCA.  21

20   U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of [the

21   FDCA] shall be by and in the name of the United States."); *see also Buckman Co. v. Plaintiffs'*

22   *Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).

23       Plaintiff cannot make an end-run around the prohibition on private enforcement by invoking

24   California's Sherman Law (which, according to plaintiff, incorporates federal food labeling

25
26   ───────────────
     [7] *See, e.g.*, Amended Complaints in *Brazil v. Dole Food Co.*, No. 12-cv-1831 (N.D. Cal.); *Kosta v.*
27   *Del Monte Corp.*, No. 12-cv-1722 (N.D. Cal.); *Khasin v. The Hershey Co.*, No. 12-cv-1862 (N.D.
     Cal.); *Samet v. Procter & Gamble Co.*, No. 12-cv-1891 (N.D. Cal.); *Thomas v. Costco Wholesale*
28   *Corp.*, No. 12-cv-2908 (N.D. Cal.).

1    requirements into California law).  FAC ¶ 9.  The Ninth Circuit recently held that a private party

2    was barred from seeking to indirectly enforce FDA labeling regulations through the Lanham Act.

3    *Pom*, 679 F.3d at 1171, 1175-76 (private litigant challenge to POM beverage name and labeling

4    barred by the FDCA's implementing regulations).  Although the Ninth Circuit did not reach the

5    specific question of whether the same reasoning would apply to the Sherman Law, the analysis in

6    *Pom* strongly suggests that it would.  In reaching its conclusion, the Ninth Circuit stated:

7    "[A]llowing such a suit would undermine Congress's decision to limit enforcement of the FDCA to

8    the federal government."  *Id.* at 1176.  Here, allowing a private right of action through the Sherman

9    Law for any alleged violation of FDA's technical regulations would put the enforcement of the

10    FDCA in the hands of any private citizen, rather than the federal government, as Congress intended.

11    *See PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 924 (9th Cir. 2010) ("The Supreme Court made

12    clear . . . that [the FDCA] also limits the ability of a private plaintiff to pursue claims under state

13    law theories where such claims collide with the exclusive enforcement power of the federal

14    government.") (*citing Buckman*, 531 U.S. at 343, 349-50, 353).

15         The California Supreme Court's decision in *Farm Raised Salmon Cases*, 42 Cal. 4th 1077

16    (2008), does not compel a different result.  That case is distinguishable from the one at hand and

17    does not bind this Court as it is contrary to the Ninth Circuit's decision in *POM*.  In the *Farm*

18    *Raised Salmon Cases*, the plaintiff alleged that defendants' use of color additives in salmon

19    constituted "deceptive marketing" under state law.  *Id.* at 1082-83.  The court held that the

20    plaintiffs' state law claims over the "deceptive marketing" were not preempted by the FDCA, which

21    governed the disclosure of food coloring, noting that preventing deceptive advertising is "within the

22    states' historic police powers."  *Id.* at 1088.  Because the marketing of the products in the case at

23    bar did not deceive plaintiff (*see supra* at II.B.1-3), the state's interest in avoiding "deceptive

24    advertising" is not at play here.  Rather, plaintiff hopes to use the alleged regulatory violation as an

25    *independent basis* to support his state law claims.  Because that was not the issue before the Court

26    in the *Farm Raised Salmon Cases*, any language in that opinion suggesting that a state law claim

27    based solely on a regulatory violation would not be precluded by the FDCA's ban on private

28    enforcement is dicta.  To allow a private right of action based on violations of FDA regulations

1   without more would vitiate the federal ban on private enforcement.  *See, e.g.*, *Loreto v. Procter &*

2   *Gamble Co.*, 737 F. Supp. 2d 909, 919 (S.D. Ohio 2010) ("A purported state-law claim does not

3   exist where the 'claim is in substance (even if not in form) a claim for violating the FDCA--that is,

4   when the state claim would not exist if the FDCA did not exist.'"); *Perez v. Nidek Co.*, 657 F. Supp.

5   2d 1156, 1166 (S.D. Cal. 2009) ("The Court will not permit Plaintiffs to privately enforce the

6   FDCA and its regulations under the guise of state law claims."); *In re Epogen & Aranesp Off-Label*

7   *Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (concluding that

8   plaintiffs cannot assert a private action premised solely on violations of the FDCA).

9   **III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT**

10          Because plaintiff has failed to state any claim for relief, the unjust enrichment claim

11   necessarily fails as well.  *Hill*, 195 Cal. App. 4th at 1307 ("Unjust enrichment is not a cause of

12   action," and thus there can be no recovery for restitution without some other underlying wrongful

13   act); *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688, at *6 (S.D. Cal. Feb. 9, 2010)

14   ("[u]njust enrichment . . . is not an independent cause of action"); *Munoz v. MacMillan*, 195 Cal.

15   App. 4th 648, 661 (2011) (there is no "freestanding cause of action for 'restitution' in California").

16   Moreover, plaintiff's unjust enrichment claim simply repeats the allegations of his prior claims, and

17   adds a prayer for restitution (which plaintiff also seeks in connection with his prior claims).  This is

18   impermissible, because "plaintiffs cannot assert unjust enrichment claims that are merely

19   duplicative of statutory or tort claims."  *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802

20   F. Supp. 2d 1070, 1077 (N.D. Cal. 2011).

21   **IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF WARRANTY**

22          The FAC purports to assert claims for breach of express warranty under the Song-Beverly

23   Act (Eighth Cause of Action) and the Magnuson-Moss Warranty Act (Ninth Cause of Action).

24   Both claims fail.

25          The Magnuson-Moss Warranty Act claim fails because the Amended Complaint does not

26   identify any "written warranty" as that term is used under the MMWA.  The MMWA defines

27   "written warranty" as an affirmation that a product is "defect free" or will "meet a specified level of

28   performance over a specified period of time."  15 U.S.C. § 2301(6).  Plaintiff alleges that the "'all

- 20 -

1   natural,' 'fresh,' nutrient and health content claims constitute 'express warranties.'" FAC ¶ 201.

2   But the statements "all natural," "fresh," "0g Trans Fat" and "No Cholesterol" are product

3   descriptions, not warranties.  *See Pappas v. Naked Juice Co of Glendora, Inc.*,  No. 11-cv-08276,

4   2012 WL 1925598, at *1-2 (C.D. Cal. May 14, 2012) ("All natural," "100% juice," "non-GMO"

5   and "from concentrate" label statements "are not warranty or defect claims, and thus are not

6   cognizable under [MMWA].");  *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2012 U.S. Dist.

7   LEXIS 102284, at *5  (N.D. Cal. July 23, 2012) ("The 'All Natural' and '100% Natural' labels

8   were not warranties that the product was 'defect free' within the meaning of the MMWA.").

9        Moreover, the MMWA is "inapplicable to any written warranty the making or content of

10  which is otherwise governed by Federal law." 15 U.S.C. § 2311(d).  The "fresh," "0g Trans Fat,"

11  and "No Cholesterol" claims are all governed by the FDCA (plaintiff admits this in the FAC), and

12  accordingly the label statements are not actionable warranties under the MMWA.  *See Hairston v.*

13  *S. Beach Beverage Co.*, No. 12-cv-1429,  2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012)

14  ("Plaintiff cannot state a claim under the MMWA" where "the FDCA and FDA labeling regulations

15  govern the [] labeling challenged by Plaintiff.");  *see also Kanter v. Warner-Lambert Co.*, 99 Cal.

16  App. 4th 780, 797-98 (2002) (holding plaintiff cannot state an MMWA claim because the FDCA

17  and implementing regulations governed the labeling at issue).

18       Plaintiff tries to circumvent these dispositive problems via the conclusory assertion that 7-

19  Eleven "promised" that its products "comply with food labeling regulations . . . ." FAC ¶ 202.  But

20  this alleged promise appears nowhere on the package, and plaintiff does not allege that it appears

21  anywhere else.  FAC ¶ 105.  The allegation accordingly carries no weight.  *See Lam*, 2012 WL

22  1656731, at *7 (dismissing breach of warranty claims where complaint alleged that the products

23  were warranted to be healthful but "fail[ed] to point to any affirmative statement, whether it be in

24  [defendant's] advertising or the [product's] packaging, indicating that the [products] are healthful.")

25       The Song-Beverly Act claim fails because damages are not available under this Act for

26  purchasers of  "any product that is intended for consumption by individuals."  Cal. Civ. Code

27  §§ 1791(a) (defining consumer goods as "any new product or part thereof that is used, bought, or

28

1    leased for use primarily for personal, family, or household purposes, *except for clothing and*

2    *consumables*"); *id.* § 1794(a) (providing damages for buyers of *consumer goods*).

3          Finally, both of plaintiff's warranty claims as to 7-Eleven's "0g Trans Fat" and "No

4    Cholesterol" statements fail for the additional reason that he does not claim that these statements are

5    false.

6                                      **Conclusion**

7          For the foregoing reasons, 7-Eleven respectfully requests that the FAC be dismissed with

8    prejudice.

9    Dated:  October 29, 2012.                    ARNOLD & PORTER LLP

10

11                                      By:  /s/ *James F. Speyer*

12                                          James F. Speyer
                                            Attorneys for Defendant
                                            7-ELEVEN, INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28