UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT BISHOP, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>7-ELEVEN, INC.,<br><br>Defendant. | Case No.: 5:12-cv-02621 EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[Docket Item No. 28]** |

Plaintiff Scott Bishop ("Plaintiff") filed this putative class action against Defendant 7-Eleven, Inc. ("Defendant"). Plaintiff alleges that the labeling on several of Defendant's food products as well as websites related to Defendant's products contain statements amounting to misbranding and deception in violation of California and federal laws.

Presently before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint. See Docket Item Nos. 17, 28.  Having fully reviewed the parties' papers and hearing the arguments of counsel, the Court grants Defendant's motion.

**I. Background**

Plaintiff, a resident of San Jose, California, alleges that since 2008 (the four years relative to the alleged class period) he purchased "on occasions" an indeterminate quantity of the following

1

Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

of Defendant's products or product categories: 7-Select potato chips, 7-Select Ice Cream, 7-Select Cheese Jalapenos, and Fresh to Go Parfait. Am. Compl. ¶¶ 17, 104. The Amended Complaint also contains several statements that assert or imply that Plaintiff has also purchased what he refers to as "Misbranded Food Products." See, e.g., id. § H (entitled "Plaintiff Purchased Defendant's Misbranded Food Products"). Plaintiff defines the term "Misbranded Food Products" in the opening of the Amended Complaint in the following way:

> In order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a class of California consumers who, within the last four years, purchased (1) Defendant's potato chips, pretzels and other food products labeled "0 grams Trans Fat" or "No Cholesterol" but which contain more than 13 grams of fat or 4 grams of saturated fat or 480 grams of sodium per 50 grams and /or disqualifying levels of fat, saturated fat, cholesterol or sodium; (2) Defendant's 7-Select Ice Cream and other food products labeled as "All Natural" but which contain artificial or unknown ingredients (3) "Fresh to Go" products or other food products labeled "guaranteed fresh" or "Fresh" but which were thoroughly processed, frozen or in a non-raw state or which contained preservatives and (4) products sold in oversized slack filled container (referred to herein as "Misbranded Food Products").

Am. Compl. at 1-2. Plaintiff argues that several statements on the packages and websites of these and other products were false, misleading, or otherwise unlawful. Plaintiff alleges that Defendant did not comply with state and federal regulations when making the following types of representations about its products: (a) nutrient content claims, including "0 grams Trans Fat" and "No Cholesterol" claims; (b) the amounts of (c) nutritional value claims; (d) "all natural," and "fresh" claims and the use of these terms; (e) failure to disclose the presence of artificial colors, and artificial flavors; and (f) the use of allegedly "slack filled" containers used to deceive consumers into believing that they are receiving more than they actually are. See id. §§ C-G.

The Amended Complaint also states that Plaintiff read the labels on Defendant's Misbranded Food Products. Id. ¶ 106. Plaintiff avers that he relied on the statements located on the labeling when making his decision to purchase the products:

> Plaintiff relied on Defendant's package labeling including the "0 grams Trans Fat" and "no Cholesterol" nutrient content claims, "all natural" and "fresh" and based and justified the decision to purchase Defendant's products in substantial part on Defendant's package

2

Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

>labeling including the "0 grams Trans Fat," "all natural" and "fresh" claims. Plaintiff relied on Defendant's product packaging including packaging size and product placement and justified the decision to purchase Defendant's product in substantial part on such packaging including packaging size and packing placement.

Id. ¶¶ 107-08. He also asserts that he did not know, nor could he reasonably have known, that Defendant's products were mislabeled, and that he would not have purchased these products "absent the improper claims." Id. ¶¶ 109-10.

On September 17, 2012, Plaintiff filed the Class Action Complaint (see Docket Item No. 17, "Amended Complaint") pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a putative class he defines as follows:

>All persons in California who, within the last four years, purchased "7-Select" products labeled "0 grams Trans Fat" and/or "No Cholesterol," but which contained more than 13 grams of fat per 50 grams or disqualifying levels of fat, saturated fat or sodium, and/or Defendant's 7-Select Ice Cream labeled "all Natural" and/or 7-11's Fresh to Go Parfait products. ("the Class").

Id. ¶ 115. In the Amended Complaint, Plaintiff brings forth the following causes of action: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (counts 1–3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq. (counts 4–5); violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. (count 6); restitution based on unjust enrichment or quasi-contract (count 7); and breach of warranty in violation of the Song–Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 et seq. (count 8) and the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq. (count 9).

California's Sherman Food, Drug, and Cosmetic Laws adopt the federal labeling requirements as the food labeling requirements of the state of California. See Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state."). The state laws also point to the adoption of specific federal provisions as the parallel state labeling requirements. See, e.g., id. § 110665 ("Any food is misbranded if its

3
Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. § 343(q)) of the federal act and the regulations adopted pursuant thereto. Any food exempted from those requirements under the federal act shall also be exempt under this section."). As such, Plaintiff argues that violations of the federal laws and regulations—namely the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq. as amended by the Nutrition Labeling and Education Act ("NLEA")—would amount to violations of the identical California state requirements.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556–57. When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1998). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation."

4

Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Twombly, 550 U.S. at 555. In addition, "material which is properly submitted as part of the complaint may be considered." Id.

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). Averments of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) (citation omitted); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

### III. Discussion

#### A. Warranty Claims

Defendant moves to dismiss Plaintiff's breach of warranty claims brought under the Song-Beverly Consumer Warranty Act ("SBCWA"), Cal. Civ. Code § 1790 et seq. (count 8), and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq. (count 9).

The SBCWA provides a private right of action for buyers of consumer goods for express or implied warranty violations. Cal. Civ. Code § 1794. The SBCWA defines "consumer goods" as "any new product or part thereof that is used, bought, or leased for use primarily for personal,

family, or household purposes, except for … consumables," id. § 1791(a) (emphasis added), and defines "consumables" as "any product that is intended for consumption by individuals, or use by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and that usually is consumed or expended in the course of consumption or use." Id. § 1791(d). The Court finds that the products at issue here—apparent food products—fall under this definition of "consumables."

Plaintiff does not dispute that the products at issue here are consumables under the SBCWA and would therefore be excepted from section 1794. See Am. Compl. ¶ 189 ("Defendant's food products are 'consumables' as defined by Cal. Civ. Code § 1791(d).") Rather, Plaintiff argues that the product labels constitute express warranties and that the products in question therefore fall under the provisions of section 1793.35, which provides for the enforcement of express warranties on consumables. The Court rejects this argument because food labels, like the ones at issue, do not constitute express warranties against a product defect. See Astiana v. Dreyer's Grand Ice Cream, Inc., No. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012); Jones v. ConAgra Foods, Inc., -- F. Supp. 2d --, No. C 12-01633 CRB, 2012 WL 6569393, at *12-13 (N.D. Cal. Dec. 17, 2012). Labels on product packaging and websites are "product descriptions rather than promises that [a food product] is defect-free, or guarantees of specific performance levels." Hairston v. S. Beach Beverage Co., No. CV 12-1429-JFW, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (internal quotation marks omitted). Accordingly, the Court finds that Plaintiff fails to state a claim for a violation of the SBCWA.

The MMWA creates a civil cause of action for consumers to enforce the terms of written warranties. 15 U.S.C. § 2310(d). Similar to Plaintiff's argument for the applicability of the SBCWA, he contends that the labeling on the products at issue constitutes an express warranty.

6
Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Having found the contrary under <u>Astiana</u> and <u>ConAgra Foods</u>, the Court rejects this argument and finds that Plaintiff fails to state a claim for a violation of the MMWA.

Accordingly, the Court dismisses Plaintiff's claims based on violations of the SBCWA and the MMWA (counts 8-9).

### B. Sufficiency of the Pleadings

The Court now turns to whether the remaining claims are sufficient to withstand Defendant's motion in light of the pleading standards set forth in the Federal Rules of Civil Procedure. The Court first notes that the heightened Rule 9 pleading standard applies to claims of false or deceptive advertising brought pursuant to the UCL, FAL, or CLRA. <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009); <u>see also</u> <u>Herrington v. Johnson & Johnson Consumer Cos., Inc.</u>, No. C 09–1597 CW, 2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010) (subjecting UCL, FAL, and CLRA claims which "sound in fraud" to the heightened Rule 9 pleading standards). Because the remaining claims involve allegations of fraudulent conduct, deception, or misrepresentation, the Rule 9 pleading standard applies. <u>See</u> <u>ConAgra Foods</u>, 2012 WL 6569393, at *10 (applying the heightened Rule 9 pleading standard to the complaint in a similar suit); <u>accord</u> <u>Colucci v. ZonePerfect Nutrition Co.</u>, No. 12–2907–SC, 2012 WL 6737800, at *8–9 (N.D. Cal. Dec. 28, 2012). As such, Plaintiff must aver with particularity the specific circumstances surrounding the alleged mislabeling that give rise to his claims. He must state with clarity the "who, what, when, where, and how" of the fraudulent conduct, <u>Vess</u>, 317 F.3d at 1106, and provide an unambiguous account of the "time, place, and specific content of the false representations," <u>Swartz</u>, 476 F.3d at 764.

Applying the Rule 9 pleading standard, the Court finds that the Amended Complaint does not provide a clear and particular account of the allegedly fraudulent, deceptive, misrepresentative, or otherwise unlawful statements. The Amended Complaint fails to unambiguously specify the

7
Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

particular products that have violated particular labeling requirements, the allegedly unlawful representations that were on the products, and the particular statements Plaintiff allegedly relied on when making his purchases.

Plaintiff uses the term "Misbranded Food Products" throughout the Amended Complaint on which he lays as the foundation of his several claims. As noted, this term refers to a non-definite class of food products: those (1) "labeled '0 grams Trans Fat' or 'No Cholesterol' but which contain more than 13 grams of fat or 4 grams of saturated fat or 480 grams of sodium per 50 grams and/or disqualifying levels of fat, saturated fat, cholesterol or sodium;" (2) those labeled "All Natural" but which contain artificial or unknown ingredients; (3) those labeled "guaranteed fresh" or "fresh" but which were "processed, frozen or in a non-raw state or which contained preservatives;" (4) those products sold in "oversized slack filled container (referred to herein as 'Misbranded Food Products')." Am. Compl. at 1–2. So stated, the term "Misbranded Food Products" refers only to ambiguous categories of food products rather than specific and particular products. In each of the causes of action set forth in the Amended Complaint, Plaintiff alleges that in selling the "Misbranded Food Products" to Plaintiff, Defendant violated state and federal laws. Because the term "Misbranded Food Products" refers to no specific or particular products, the claims that use that term cannot allege that specific and particular products contained unlawful labeling. As such, Plaintiff has not met the Rule 9 standard of pleading with specificity which particular products are at issue.

This ambiguity and non-specificity exists throughout the Amended Complaint. Which specific and particular products Plaintiff purchased—the action which gives rise to his lawsuit—are ambiguous. In the Amended Complaint, Plaintiff appears to enumerate four distinct products that he claims to have purchased: "7-Select Cheddar & Sour Cream Flavored Potato Chips, "7-Select Cream Cheese Jalapeños," "7-Select Homemade Strawberry Ice Cream," and "Fresh to Go

Strawberry Yogurt Parfait." Id. ¶ 105. However, he also states that he purchased "Misbranded Food Products," and apparent categories of food he lists as "7-Select potato chips labeled '0 grams Trans Fat' and 'No Cholesterol,' 7-Select Ice Cream . . . and Fresh to Go Parfait on occasions during the Class Period." See, e.g., id. ¶ 104. The placement of the ambiguous assertion that he purchased a non-definite group of products alongside the enumerated list creates ambiguity and confusion as to precisely which products Plaintiff purchased. In order to glean the precise and particular products at issue here, Defendant—as well as the Court—would have to draw its own inferences based on the equivocal assertions contained in the Amended Complaint. Drawing such inferences about the particular misconduct that is alleged to constitute fraud, deception, or misrepresentation is something the heightened Rule 9 pleading standard of particularity and specificity seeks to avoid. See Semegen, 780 F.2d at 731.

When attempting to explicate the bases of his claims, moreover, Plaintiff does not clearly and unambiguously present which allegedly unlawful language referred to which particular of Defendant's products. Rather, the Amended Complaint contains generalized or ambiguous statements that Defendant has made unlawful claims. While sections B through G of the Amended Complaint contain lengthy discussions of California law and FDA enforcement actions, they fail to link specific enumerated products and the language on their packaging to violations of California and federal law. As but one example: when discussing the contention that Defendant has made unlawful claims about the nutrient content of its products, Plaintiff alleges: "Defendant repeatedly violates [21 C.F.R. § 101.13(h)(1)].[1] Defendant's Misbranded Food Products' packaging prominently makes '0 grams Trans Fat' claims despite disqualifying levels of fat that far exceed the 13 gram disclosure threshold." Am. Compl. ¶ 49. As a result, it is unclear which precise

---

[1] "If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows …" 21 C.F.R. § 101.13(h)(1) (expounding on the labeling requirements for certain quantities of fat).

9

Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

products are alleged to be at issue, namely the "who, what, when, where, and how" of the fraudulent conduct remain ambiguous, Vess, 317 F.3d at 1106.

In addition, in the section of the Amended Complaint entitled "Causes of Action"—in which Plaintiff lists his nine claims that Defendant violated state or federal law—Plaintiff makes not a single mention of a particular or specific product which allegedly contains unlawful labeling. Rather, Plaintiff uses the term "Misbranded Food Products" throughout this section. As noted, this term does not refer to a specific and definite class of Defendant's products. Accordingly, the Court is unable to identify the particular products which Plaintiff alleges contain unlawful labeling. For these reasons, the Court finds that Plaintiff's claims have not been sufficiently pled so as to meet the heightened Rule 9 pleading standard. As such the Court will dismiss the remaining seven claims.

### IV. Conclusion and Order

For the foregoing reasons Defendant's Motion to Dismiss is GRANTED. Plaintiff's breach of warranty claims predicated on violations of the SBCWA (count 8) and the MMWA (count 9) are DISMISSED WITH PREJUDICE. The remainder of Plaintiff's claims (counts 1–7) is DISMISSED WITHOUT PREJUDICE.

If Plaintiff wishes to further amend his complaint, the Court orders that it be pled in compliance with the pleading standards of Rules 8 and 9 and filed within 15 days of the date of this Order.

//
//
//
//
//

Because the Amended Complaint is presently dismissed in its entirety, the Court declines to set a case management schedule at this time. However, the Court will address scheduling issues as raised by the parties should it become necessary.

**IT IS SO ORDERED**

Dated: August 5, 2013



EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-cv-02621 EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS