1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SCOTT BISHOP, individually and on behalf of all others similarly situated | ) ) | Case No. 5:12-CV-02621-EJD |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION TO DISMISS** |
| | ) | |
| v. | ) | |
| | ) | |
| 7-ELEVEN, INC., | ) | **[Re: Docket No. 52]** |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

United States District Court
For the Northern District of California

        Presently before the Court is Defendant 7-Eleven's ("Defendant" or "7-Eleven") Motion to

Dismiss Plaintiff Scott Bishop's ("Plaintiff" or "Bishop") Second Amended Complaint ("SAC").

Plaintiff filed this putative class action against Defendant alleging that several of Defendant's

products have been improperly labeled so as to amount to misbranding and deception in violation

of several California and federal laws.

        Per Civ. L.R. 7-1(b), the motion was taken under submission without oral argument.

Having fully reviewed the parties' papers, the Court grants Defendant's Motion to Dismiss for the

reasons explained below.

**I. BACKGROUND**

        Plaintiff filed his original Complaint in this case on May 21, 2012.  Dkt. No. 1.  Plaintiff's

First Amended Complaint ("FAC") was filed on September 17, 2012.  Dkt. No. 17.  Defendant

filed a Motion to Dismiss, which was granted per this Court's order on August 5, 2013.  Dkt. No. 46.  The Court dismissed Plaintiff's claims based on violations of the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act.  Further, the Court concluded that Plaintiff's claims did not meet the Rule 9 pleading standard because Plaintiff did not provide a clear and particular account of the allegedly fraudulent, deceptive, misrepresentative, or otherwise unlawful statements.

Plaintiff filed the SAC on August 20, 2013 on behalf of himself and a putative class of all persons in the United States who have purchased the same product or other of Defendant's similar food products that were allegedly mislabeled.  Dkt. No. 47.  Defendant filed its Motion to Dismiss on September 24, 2013.  Dkt. No. 52.

Plaintiff is a California consumer who, since May 21, 2008, purchased 7-Select Cheddar & Sour Cream Chips.  Dkt. No. 47 ¶¶ 2-3.  Plaintiff argues that the following representations on the packaging of this and other of Defendant's food products were unlawful and/or misleading: (1) "0g trans fat" and (2) "no cholesterol."  Plaintiff argues that the following "substantially similar" products bear the identical unlawful and/or misleading statements and should be included in the "class products": 7-Select Kettle Style Chips in barbeque, jalapeno, original, salt & vinegar, and sour cream & onion flavors; 7-Select barbeque potato chips; 7-Select big bite hot dog chips; 7-Select original potato chips; and 7-Select sour cream & onion chips.  Id. at ¶ 4.

Plaintiff alleges the following causes of actions: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., (counts 4-5); and violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., (count 6).  Id. ¶¶ 109-66.

## II. LEGAL STANDARD

### A. Rule 8(a)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  A

2

Case No. 5:12-CV-02621-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim

2   upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is

3   appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a

4   cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir.

5   2008). Moreover, the factual allegations "must be enough to raise a right to relief above the

6   speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

7          When deciding whether to grant a motion to dismiss, the court generally "may not consider

8   any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d

9   1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual

10  allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also construe the

11  alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242,

12  1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint

13  or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee

14  v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). But "courts are not bound to accept

15  as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

16         **B. Rule 9(b)**

17         Fraud-based claims are subject to heightened pleading requirements under Federal Rule of

18  Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the

19  circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough

20  to give defendants notice of the particular misconduct which is alleged to constitute the fraud

21  charged so that they can defend against the charge and not just deny that they have done anything

22  wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations

23  must contain "an account of the time, place, and specific content of the false representations as well

24  as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764

25  (9th Cir. 2007) (citation omitted). Averments of fraud must be accompanied by the "who, what,

26  when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d

27  1097, 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts

28  explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160

Case No. 5:12-CV-02621-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    F. Supp. 2d 1150, 1152 (S.D. Cal. 2001); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541,

2    1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

3            **C. Rule 12(b)(1)**

4            A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction.

5    Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may be either facial or factual.  Wolfe v.

6    Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  A facial 12(b)(1) motion involves an inquiry

7    confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to

8    look beyond the complaint to extrinsic evidence.  Id.  When a defendant makes a facial challenge,

9    all material allegations in the complaint are assumed true, and the court must determine whether

10   lack of federal jurisdiction appears from the face of the complaint itself.  Wolfe, 392 F.3d at 362.

11           On a factual challenge, the party opposing the motion must produce affidavits or other

12   evidence necessary to satisfy its burden of establishing subject matter jurisdiction.  Safe Air For

13   Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  Under a factual attack, the court need

14   not presume the plaintiff's allegations are true.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000);

15   accord Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).  In the absence of a full-

16   fledged evidentiary hearing, however, disputed facts pertinent to subject matter jurisdiction are

17   viewed in the light most favorable to the nonmoving party.  Dreier v. United States, 106 F.3d 844,

18   847 (9th Cir. 1996).

19           Federal courts are courts of limited jurisdiction, adjudicating only cases which the

20   Constitution and Congress authorize.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S.

21   375, 377 (1994).  An Article III federal court must ask whether a plaintiff has suffered sufficient

22   injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  To

23   satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and

24   particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the

25   challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury

26   will be redressed by a favorable decision.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,

27   528 U.S. 167, 180-81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992).

28

**United States District Court**
For the Northern District of California

4

1    At least one named plaintiff must have suffered an injury in fact.  See Lierboe v. State Farm

2    Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) ("if none of the named plaintiffs

3    purporting to represent a class establishes the requisite of a case or controversy with the

4    defendants, none may seek relief on behalf of himself or any other member of the class").

5        A suit brought by a plaintiff without Article III standing is not a "case or controversy," and

6    an Article III federal court therefore lacks subject matter jurisdiction over the suit.  Steel Co. v.

7    Citizens for a Better Env't, 523 U.S. 83, 101 (1998).  "A party invoking the federal court's

8    jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."

9    Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).  If a court determines that it lacks

10   subject matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

## III. DISCUSSION

12       Plaintiff alleges that Defendant violated state and federal labeling laws because foods

13   labeled with the "0g trans fat" and "no cholesterol" labels failed to include required disclosure

14   statements.  Plaintiff frames his case as consisting of two facets: (1) the "unlawful" part, claiming

15   that Defendant's packaging and labels violate state and federal laws, making the products

16   "misbranded" and therefore illegal to sell or possess, lacking economic value, and legally

17   worthless; and (2) the "fraudulent" part, claiming that the labels are misleading, deceptive, unfair,

18   and fraudulent.  Dkt. No. 47 ¶ 5.

### A. Statutory Framework

20       The operative statute in this matter is the Food, Drug, and Cosmetic Act ("FDCA"), 21

21   U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"),

22   21 U.S.C. § 343 et seq.  21 U.S.C. § 343 establishes the conditions under which food is considered

23   "misbranded."  Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false

24   or misleading in any particular."

25       The California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health &

26   Safety Code § 109875 et seq., incorporates the requirements of the FDCA as the food labeling

27   requirements of the state of California.  Plaintiff brings claims for relief under the UCL, FAL, and

28   CLRA based on Defendant's alleged violations of the Sherman Law.  The UCL prohibits business

United States District Court
For the Northern District of California

5

1    practices that are unlawful, unfair, or fraudulent.  The "fraudulent" prong of the UCL "requires a

2    showing [that] members of the public are likely to be deceived."  <u>Wang v. Massey Chevrolet</u>, 97

3    Cal. App. 4th 856, 871 (2002).  The "unlawful" prong of the UCL "borrows violations of other

4    laws and treats them as independently actionable."  <u>Daugherty v. Am. Honda Motor Co., Inc.</u>, 144

5    Cal. App. 4th 824, 837 (2006).  As for the "unfair" prong, "California appellate courts disagree on

6    how to define an 'unfair' act or practice in the context of a UCL consumer action."  <u>Morgan v.</u>

7    <u>Wallaby Yogurt Co., Inc.</u>, No. 13-CV-00296-WHO, 2014 WL 1017879, at *11 (N.D. Cal. March

8    13, 2014) (citing <u>Davis v. Ford Motor Credit Co.</u>, 179 Cal. App. 4th 581, 594 (2009)).  Some

9    courts have held that the "unfair" prong requires alleging a practice that "offends an established

10   public policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to

11   consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory

12   provision."  <u>Bardin v. Daimlerchrysler Corp.</u>, 136 Cal. App. 4th 1255, 1263, 1266 (2006) (citations

13   omitted).  Other courts have held that the court must apply a balancing test that "weigh[s] the

14   utility of the defendant's conduct against the gravity of the harm to the alleged victim."  <u>Schnall v.</u>

15   <u>Hertz Corp.</u>, 78 Cal. App. 4th 1144, 1167 (2000).

16        **B. Standing**

17        As noted, to establish Article III standing, a plaintiff must allege facts showing an injury-in-

18   fact, causation, and redressability such that the injury will be likely redressed by a decision in the

19   plaintiff's favor.  <u>Lujan</u>, 504 U.S. at 561-62.  An injury-in-fact requires showing "an invasion of a

20   legally protected interest which is concrete and particularized and actual or imminent, not

21   conjectural or hypothetical."  <u>Id.</u> at 560 (citations and internal quotation marks omitted).

22        The UCL and FAL incorporate the Article III standing requirements, but additionally

23   require that the plaintiff plead an economic injury.  <u>Kwikset Corp. v. Superior Court</u>, 51 Cal. 4th

24   310, 322-23 (2011); <u>see also</u> <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820, 825 n.1 (9th

25   Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury . . . and

26   'immediate' causation. . . . Neither is required for Article III standing." (internal citations

27   omitted)).  Proposition 64 was enacted in 2004 as a means of "confin[ing] [UCL] standing to those

28   actually injured by a defendant's business practices and [ ] curtail[ing] the prior practice of filing

6

1  suits on behalf of clients who have not used the defendant's product or service, viewed the

2  defendant's advertising, or had any other business dealing with the defendant." <u>Kwikset</u>, 51 Cal.

3  4th at 321 (internal citations omitted).  Under the UCL and FAL, a plaintiff suffers an injury-in-fact

4  when he or she has "(1) expended money due to the defendants' acts of unfair competition; (2) lost

5  money or property; or (3) been denied money to which he or she has a cognizable claim."

6  <u>Chacanaca v. Quaker Oats Co.</u>, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010).

7      To satisfy the injury-in-fact requirement for unfair competition claims, "courts in California

8  require that plaintiffs demonstrate the purchase of products as a result of deceptive advertising."

9  <u>Id.</u>  To plead actual reliance, the "plaintiff must allege that the defendant's misrepresentations were

10  an immediate cause of the injury-causing conduct."  <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 328

11  (2009).  However, "the plaintiff is not required to allege that those misrepresentations were the sole

12  or even the decisive cause of the injury-producing conduct."  <u>Id.</u>  A plaintiff can satisfy the UCL's

13  standing requirement by alleging that he or she would not have bought the product but for the

14  alleged misrepresentation.  <u>Kwikset</u>, 51 Cal. 4th at 330.

15      The California Supreme Court has held that the phrase "as a result of" in UCL section

16  17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement

17  action under the UCL's fraud prong."  <u>Tobacco II</u>, 46 Cal. 4th at 326.  This also applies under the

18  UCL's "unlawful" and "unfair" prongs, where the predicate unlawfulness is misrepresentation and

19  deception.  <u>Hale v. Sharp Healthcare</u>, 183 Cal. App. 4th 1373, 1385 (2010); <u>see also</u> <u>Kwikset</u>, 51

20  Cal. 4th 310; <u>In re Actimmune Mkt. Litig.</u>, No. 08-2376, 2010 WL 3463491, at *8 (N.D. Cal. Sept.

21  1, 2010), <u>aff'd</u>, 464 F. App'x 651 (9th Cir. 2011); <u>Brazil v. Dole Food Co.</u>, 935 F. Supp. 2d 947

22  (N.D. Cal. 2013); <u>Kane v. Chobani</u>, No. 12-CV-02425-LHK, 2014 WL 657300, at *5 (N.D. Cal.

23  Feb. 20, 2014).

24      The federal and state statutes relied on by Plaintiff prohibit a particular type of consumer

25  deception, the mislabeling of food products.  As such, the actual reliance requirement applies to

26  Plaintiff's claims under all prongs of the UCL.  <u>See</u> <u>Figy v. Amy's Kitchen</u>, No. 13-CV-03816-SI,

27  2013 WL 6169503 (N.D. Cal. Nov. 25, 2013); <u>Kwikset</u>, 51 Cal. 4th 310; <u>Wilson v. Frito-Lay N.</u>

28  <u>Am.</u>, 961 F. Supp. 2d 1134 (N.D. Cal. 2013).

7

Case No. 5:12-CV-02621-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1   Defendant argues that Plaintiff cannot establish standing because Plaintiff cannot

2   demonstrate that he was deceived by Defendant's alleged conduct.  However, Plaintiff counters

3   that he purchased Defendant's products in reliance on the "no trans fat" and "no cholesterol"

4   representations.  Dkt. No. 47 ¶¶ 10 n.1, 13, 27, 56, 76.  Plaintiff notes that he relied "1) on the

5   Defendant's explicit representations that its products contained '0g Trans Fat' and 'No Cholesterol'

6   and were thus healthier than other potato chips lacking such statements and 2) the Defendant's

7   implicit representation based on Defendant's material omission of material facts that the

8   Defendant's Cheddar & Sour Cream Chips purchased by the Plaintiff were legal to sell and

9   possess."  Id. ¶ 13.  Plaintiff does not argue that the labels were misleading because the food

10  product actually contained trans fat or cholesterol, rather that the product labels did not include

11  disclosures mandated by 21 C.F.R. § 101.13(h) and § 101.62(d)(1)(ii).

12          21 C.F.R. § 101.13(h)(l) provides that:

13          If a food . . . contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of

14          cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled

15          serving, or, for a food with a reference amount customarily consumed of 30 g or less . . . per

16          50 g . . . then that food must bear a statement disclosing that the nutrient exceeding the

17          specified level is present in the food as follows: "See nutrition information for __ content"

18          with the blank filled in with the identity of the nutrient exceeding the specified level, e.g.,

19          "See nutrition information for fat content."

20          Plaintiff claims that Defendant violates this provision because the purchased product

21  allegedly contains more than 13 grams of fat and does not include the required disclosure.  Dkt.

22  No. 47 ¶ 18.  However, 21 C.F.R. § 101.13(h)(l) does not reference the amount of total fat found in

23  a food product, and Plaintiff does not allege that the product contains more than 13g of fat per

24  amount customarily consumed, per serving, or per 50g such that a disclosure would be required.

25          Furthermore, 21 C.F.R. § 101.62(d)(1)(ii)(D) provides that:

26          The terms "cholesterol free" . . . may be used on the label . . . provided that . . . for foods

27          that contain more than 13 g of total fat per reference amount customarily consumed, per

28          labeling serving, or per 50 g if the reference amount customarily consumed is 30 g or less . .

8

1    . [t]he label or labeling discloses the level of total fat in a serving . . . such disclosure shall

2    appear in immediate proximity to such claim preceding any disclosure statement required

3    under § 101.13(h) . . .

4         Plaintiff alleges that Defendant's labels fail to meet this requirement as the food product

5    contains more than 13 grams of fat per 50 grams and does not include disclosure statement about

6    the total fat per serving size on the panel.  As opposed to Plaintiff's allegation about Defendant's

7    violation of 21 C.F.R. § 101.13(h)(l), Plaintiff demonstrates how the label may violate 21 C.F.R. §

8    101.62(d)(1)(ii) by alleging that per 50 grams of product, the product contains more than 13 grams

9    of fat.  This alleged violation is mentioned once in a footnote of the SAC and never brought up

10   again in the SAC.  Dkt. No. 47 ¶ 10 n.1.

11        In Delacruz v. Cytosport, No. C-11-3532-CW, 2012 WL 2563857 (N.D. Cal. June 28,

12   2012), this district dismissed a similar "0 grams trans fat" claim, holding that even though the

13   statement was not accompanied by a 21 C.F.R. §101.13(h)(1) disclosure, the statement about trans

14   fat was true and the "alleged distraction" posed relative to fat and saturated fat was neither a false

15   statement nor a misrepresentation and therefore, not an actionable claim.  Id. at *8-10.  Similarly,

16   this Court dismissed a "0g trans fat" claim in Thomas v. Costco, No. 12-CV-02908-EJD, 2014 WL

17   1323192 (N.D. Cal. Mar. 31, 2014), finding that under similar facts the plaintiff had not pled an

18   injury-in-fact and therefore had no standing to bring such a claim.

19        Plaintiff points to Wilson v. Frito-Lay, 2013 WL 1320468 (N.D. Cal. April 1, 2013), and

20   Samet v. Procter & Gamble, No. 12-CV-01891-PSG, 2013 WL 3124647 (N.D. Cal. June 18,

21   2013), to support his argument, but those cases are distinguishable from both Cytosport and

22   Thomas.  In Frito-Lay, unlike in Cytosport and Thomas, the "0 grams trans fat" statement was

23   accompanied by a disclosure directing consumers to see nutrition facts for saturated fat

24   information, without telling them to look at the total fat level, which was higher than 13 grams of

25   fact.  The court found that the plaintiffs sufficiently alleged that the statement was deceptive

26   because, accompanied by a disclosure of at least one of the ingredients that 21 C.F.R.

27   §101.13(h)(1) requires to be disclosed (saturated fat),  they and other consumers would think that

28   the statements on the labels made accurate claims about the product's nutritional content, when

9

Case No. 5:12-CV-02621-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

they did not. <u>Frito-Lay</u>, 2013 WL 1320468 at \*14. The <u>Frito-Lay</u> court noted <u>Cytosport</u>'s opposite holding, concluding that it was based on a distinct fact pattern. The facts in the present case are identical to those in <u>Cytosport</u> and distinct from <u>Frito-Lay</u>, as no incomplete disclosure was included in the labeling.

In <u>Samet</u>, plaintiffs brought a similar "0g trans fat" claims. The court noted that <u>Frito-Lay</u> found that a "0g trans fat" statement could be misleading to a consumer, but declined to decide whether that was true in the <u>Samet</u> case because plaintiffs had not alleged in detail required by Rule 9(b) how they were misled. <u>Samet</u>, 2013 WL 3124647, at \*8.

In conclusion, the Court finds that Plaintiff has not pled an injury-in-fact and therefore has no standing to bring a claim. As was decided in <u>Cytosport</u> and <u>Thomas</u> with similar "0g trans fat" claims, without a false statement or misrepresentation, there is no actionable claim. The lack of disclosure, on its own, is not enough to confer standing on Plaintiff to bring a claim.

**IV. CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss will be GRANTED. Plaintiff's claims are dismissed with prejudice. The clerk shall close this file.

**IT IS SO ORDERED**

Dated: April 21, 2014

EDWARD J. DAVILA
United States District Judge

Case No. 5:12-CV-02621-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS